604 So.2d 1071 (1991)
BORDEN, INC.
v.
Billy C. ESKRIDGE.
No. 89-CC-0787.
Supreme Court of Mississippi.
November 20, 1991.
Concurring Opinion August 19, 1992.
Rehearing Denied August 19, 1992.
Dan McCullen, R. Andrew Taggart, Butler Snow, O'Mara, Stevens & Cannada, for appellant.
H.J. Davidson, Jr., Carter & Davidson, Columbus, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Borden, Inc., has appealed a judgment of the circuit court of Oktibbeha County affirming a total temporary disability award by the Mississippi Workers Compensation Commission (the Commission) to Billy Charles Eskridge for a "major depression of psychotic proportions." Borden argues on appeal that this mental disability unaccompanied by any physical injury, even if work related, is nevertheless non-compensable because it could only have resulted from "ordinary incidents of employment." Fought v. Stuart C. Irby, 523 So.2d 314, 318 (Miss. 1988). The administrative law judge and the Commission (one member dissenting) found, however, that a proximate cause of Eskridge's disability was not an incident of ordinary employment, but a "course of conduct" on the part of Borden's plant supervisor Laverne Kinard "designed *1072 to cause the claimant and his wife to leave the employment of Borden, Inc." There was substantial evidence supporting this finding by the Commission, and we affirm.

FACTS
Eskridge is a high school graduate with almost three years in college. While in college he worked summers at Borden's plant in Starkville. After two years service in the United States Navy, he worked two or three years in his father's sawmill, and began full-time employment at Borden's in 1960 as a manual laborer, working as janitor, loading boxcars and packaging. In 1968 he was made supervisor of the cleaning crew and sanitation. In July, 1972, he was promoted to assistant plant superintendent.
At that time Kinard was promoted to plant superintendent.
Eskridge served as assistant plant superintendent until 1979, when he was demoted to quality control supervisor. David Hovet, an assistant manager at a Borden potato chip factory in North Dakota, was imported to replace Eskridge. In July, 1980, Eskridge was again demoted to supervisor in shipping and receiving, being replaced by Bill McNell, who was promoted from shipping and receiving to quality control supervisor.
Eskridge's wife June, who worked in the Borden office for 22 years prior to quitting in August, 1983, testified that in June, 1978, while she and Kinard were in the coffee room at the plant, he kissed her on the neck. She told him to be affectionate with his own wife. She testified that thereafter Kinard began to ignore her husband. She also heard Kinard tell Norman Stone, a company executive, that the "red-headed so-b," referring to Eskridge, was not going to stay, one or the other had to leave. She also overheard other disparaging remarks Kinard made about Eskridge.
Likewise, following the coffee room incident, there was a precipitate cooling of Kinard towards Mrs. Eskridge, and he avoided any conversation with her. She never told her husband about the Kinard advance.
Eskridge began keeping a diary in 1978. Kinard chastised Eskridge in the presence of an engineer from company headquarters in Columbus, Ohio, for not getting a lock for a control panel, and would not let him explain. In the installation of the vacuum pan, Kinard ignored Eskridge's efforts to assist. Kinard stopped inviting him to the Mississippi Dairy Products annual conventions on the coast. He was shunned by Kinard and the other plant supervisors, and never invited to their coffee room discussions. All other supervisors were invited to informal gatherings.
Kinard never gave Eskridge any reason for the demotions, and would not discuss Eskridge's problems with him. Eskridge called company headquarters in Columbus, Ohio, who informed him the company would back Kinard's decisions. Only in September, 1983, after he and his wife had both quit their jobs did a representative of the company come to Eskridge's home and listen to his complaints.
Eskridge testified that it was increasingly difficult to work under Kinard because of his attitude. Although his pay was not reduced, neither did he receive pay raises as the others. He was required to fill in for other supervisors on vacation or leave, requiring longer work hours. His work load was not reduced, and he was given more responsibilities. A rumor circulated through the plant in 1982 that he and his wife were going to be fired. He lived in fear of being fired, and his fellow employees lost respect for him. When he asked an employee to do a task, he would be told he was not in authority.
Eskridge was overweight and had high blood pressure for which he began taking regular medication in 1977.
He admitted having run-ins with other supervisors, and that he made mistakes.
A series of performance reports prepared by Kinard were introduced into evidence. Eskridge's 1978 report showed "very good" performance and that his potential was developing. The 1979-1982 reports were critical *1073 and stated he was not a candidate for promotion.
Eskridge stated that Kinard's treatment of him caused him to be nervous, anxious, inattentive, unable to sleep, and depressed.
On Friday, January, 28, 1983, when Eskridge was in a Sturgis cafe following work hours, his blood pressure went up to stroke level, and he blacked out. He was examined by his doctor, Kermit Laird, M.D., and a friend took him home. Eskridge reported this blackout spell to Borden the following Monday. Thereafter Eskridge had increasing dizzy spells, irritability and nervousness, and recurring nightmares.
In March, 1983, Dr. Laird referred Eskridge to Earl Sudduth, M.D., a Jackson internist, who, after hospitalizing Eskridge and having tests run, diagnosed his problem as acute toxic labyrinthitis, hypertension and mild obesity.
In May Dr. Laird referred Eskridge to Allen Boyd, M.D., a Memphis neurologist. Dr. Boyd had Eskridge hospitalized for eight days, beginning May 12, for tests. He found no evidence of any neurological disorder.
Eskridge quit work on May 31, 1983. At the time he was 51 years old. Mrs. Eskridge quit her job in August.
In July, 1983, Dr. Boyd referred Eskridge to Melvyn Levitch, M.D., a board certified psychiatrist, who treated him over the next two and a half years. From the history Eskridge gave him and his examination of Eskridge, he found him to be a very depressed and anxious person, emotion-filled and on the verge of being violent. He placed Eskridge on anti-depressant drugs, and had him admitted to the Baptist Hospital in Memphis for psychological testing.
Dr. Levitch testified that Eskridge suffered from a major depression of psychotic proportions. He was overwhelmed with a sense of helplessness, hopelessness and feeling of being worthless. He stated Eskridge was unable to withstand pressure or stress of any sort. Beginning with his treatment in July, 1983, Eskridge's condition had only improved slightly, and his prognosis was guarded. He was of the opinion that Eskridge was totally disabled from doing any management type job, but could work around the house or farm so long as no one was there to agitate him.
Dr. Levitch was of the professional opinion that Eskridge's condition of employment was a significant cause of his mental illness. He found no other etiological factor in Eskridge's condition.
There were employees at the plant who corroborated Eskridge's testimony, and Kinard and other Borden employees hotly disputed Eskridge's claims. There is no occasion to detail this evidence because there was substantial evidence supporting the above-related facts.
On January 17, 1985, Eskridge filed a petition to controvert with the Commission, alleging he had suffered a compensable injury on January 28, 1983. Hearing was held in May, 1986, following which the administrative law judge awarded Eskridge temporary total disability weekly benefits of $112 until he reached maximum recovery. The Commission, one member dissenting, affirmed.

LAW

I. COMPENSABLE DISABILITY
As we stated in Fought:
Today's case arises in an area that has not been without controversy. Many would deny compensability of mental or psychological injuries altogether, as they are difficult to prove both in experience and work connection. As proof is difficult, feigning and malingering are thought easy, thus opening the system to fraud.
523 So.2d at 317.
When a worker seeks compensation benefits for disability resulting from a mental or psychological injury, he must not only prove a (1) disability that is (2) work-related, but also, (3) and again as we stated in Fought:
Furthermore, to be compensable, a mental injury, unaccompanied by physical trauma, must have been caused by something *1074 more than the ordinary incidents of employment. (Emphasis added)
523 So.2d at 318.
Also, as in Fought, "this appeal turns in the end on the Commission's finding of fact." 523 So.2d at 318.
As we have stated upon numerous occasions, the Commission is the "trier and finder of facts" and will not be reversed if its findings of fact are supported by "substantial evidence." Dunn, Mississippi Workers' Compensation, §§ 284, 286, 288, 289 (3rd ed. 1982); Fought, 523 So.2d at 317.
The claimant Fought sought, as did Eskridge, workers' compensation benefits for psychological disability unaccompanied by any physical trauma. The significant difference between Fought and this case is that in Fought the Commission found as fact that Fought had failed to establish by clear and convincing evidence that: (1) there was a connection between her work and disability, and also (2) that her mental disability was attributable to a pre-existing personality disorder.
In this case, the administrative law judge found that Borden's course of conduct aggravated Eskridge's pre-existing condition. The Commission, however, found that Eskridge's mental disability was caused by a deliberate course of conduct by his employer, and that there was nothing in his psychological background to suggest a pre-existing personality disorder.
There is substantial credible evidence to support the Commission's findings, and we are not persuaded by Borden's argument to the contrary. Dr. Levitch, a reputable board certified psychiatrist who treated Eskridge for over two years, testified that Eskridge was psychologically disabled and his work played a significant part in causing it. Testimony from Eskridge and his wife, corroborated in part by fellow employees, established a protracted pattern by Kinard to put pressure and stress upon Eskridge. It takes no extraordinary discernment to detect in a man of Eskridge's age, skill and one-industry training, ample reason for a normal person to be under stress and pressure because of an inability, through no fault of his own, to please his employer and a prospect at advanced middle age of joining the ranks of the unemployed.
In fairness, we add that there was substantial credible evidence to support the opposite conclusion. Unfortunately for Borden, the Commission as fact finder, as in Brown & Root Const. Co. v. Duckworth, 475 So.2d 813 (Miss. 1985), found a compensable mental disability, and under our standard of appellate review, we are not at liberty to reverse this finding. The Commission obviously found, contrary to its finding in Fought, 523 So.2d at 318, that stresses to which Eskridge was subjected were "more than the ordinary incidents of employment," and were "untoward events or unusual occurrences" culminating in his blackout on January 28, 1983, and subsequent disability.

II. CREDIT FOR SALARY AND PENSION PLAN BENEFITS PAID

III. IS ANY PENALTY DUE?
Borden, a self-insurer, also had in effect a long term disability benefit plan whereby Eskridge was paid $1,070.40 per month. Under the plan Eskridge was to receive sixty percent of his yearly salary payable twice each month, but in computing this sum, all sums paid him by workers' compensation benefits and social security income disability benefits were to be included. After adding these, the pension plan paid the remainder in order to reach a sum equal to sixty percent of his monthly salary. Borden began paying Eskridge benefits under the plan, and subsequently Eskridge began receiving social security income disability benefits. When Eskridge began receiving these benefits, the monthly payments under the plan were reduced accordingly. The plan in effect with Borden was analogous to the plans we addressed in Western Electric, Inc. v. Ferguson, 371 So.2d 864, 868 (Miss. 1979), and South Central Bell Telephone Company v. Aden, 474 So.2d 584, 596 (Miss. 1985).
*1075 Paragraph 2 of the order of the administrative law judge concluded with the following sentence:
Any benefits paid to claimant as a result of a long term disability benefits plan and for any salary paid to the claimant for periods of time since the 28th day of January, 1983, during which the claimant might have worked for the employer should also be credited against money owed the claimant in compensation benefits.
Borden appealed to the Commission on the issue of whether or not there was a compensable injury and Eskridge cross-appealed only on the issue of credits for disability payments.
The Commission's order concluded as follows:
1. Temporary total disability benefits at the rate of $112.00 per week beginning January 25, 1983, and continuing until such time as the date of maximum medical recovery is established by competent medical evidence; and
2. All medical services and supplies required by the nature of claimant's injury or the process of his recovery as provided in Miss. Code Ann., Section 71-3-15 (1972).
IT IS ALSO ORDERED AND ADJUDGED that a ten percent (10%) penalty shall be assessed on untimely installments of compensation pursuant to Miss. Code Ann., Section 71-3-37(5) (1972). (Emphasis added)
Rather than seek clarification from the Commission on its order, Borden upon appeal informs us that it is not sure what the Commission meant in its order, insofar as credits due for payments made in salary to Eskridge and the amounts paid him under the pension plan.
If there is something about a Commission order which is unclear to the parties, that forum is the proper place to get the matter clarified. Moreover, the question as to how benefits are to be applied as between carrier and pension plans is for another forum.
Accordingly, we do not address Borden's assignment of error as to credits for salary and pension plan payments.
Borden also objects to the assessment of any statutory penalty. The Commission did not assess any penalty on disability payments due under the Act, but "untimely installments," i.e., installments due but not paid in some way, either compensation benefits, or by salary or under the pension plan. As provided in Miss. Code Ann. § 71-3-37(5), Borden is only liable for the ten percent statutory penalty on any installment "not paid within fourteen (14) days after it becomes due." The Commission only assessed a penalty on delinquent installments.
The circuit judge affirmed the order of the Commission. Finding the order of the Commission supported by substantial evidence and containing no reversible error, we affirm the judgment of the circuit court.
AFFIRMED AND REMANDED TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
McRAE, J., specially concurs with written opinion to follow.
DAN M. LEE, P.J., and PITTMAN, J., dissent with separate written opinion.
McRAE, Justice, specially concurring:
I write specially to concur that while we have facilitated recovery for emotional distress cases in workers' compensation cases pursuant to the Act, we have not overruled any of our case law governing recovery for such injuries which result from the employers' or employees' intentional acts or any acts of gross negligence. See Miss. Code Ann. § 71-3-3(b) (Supp. 1991).
Those remedies allowed are where the employer can hide behind the Workers' Compensation Act to forego any common-law remedies that we have enunciated in Royal Oil Co., Inc. v. Wells, 500 So.2d 439 (Miss. 1986), Miller v. McRae's, Inc., 444 So.2d 368 (Miss. 1984); Miller Transporters v. Reeves, 195 So.2d 95 (Miss. 1967).
*1076 I would find that our decision in Fought v. Stuart C. Irby Company, 523 So.2d 314, 317 (Miss. 1988), as well as its antecedents, Smith & Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985) and Miller Transporters v. Reeves, 195 So.2d 95 (Miss. 1967), should be overruled to the extent that they require the claimant to prove by clear and convincing evidence that his disability resulted from psychological injuries causally related to his employment. In intentional tort cases, we have allowed the plaintiff to prove psychological injuries and psychological stress disorders by only the burden of the preponderance of the evidence, not that of clear and convincing evidence. First National Bank v. Langley, 314 So.2d 324 (Miss. 1975). Workers' Compensation laws are to be liberally construed in favor of the claimant. Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329 (Miss. 1988). Here, by imposing a higher standard of proof on the claimant, we place an undue burden upon him in contravention of the beneficent and humanitarian purposes of the Workers' Compensation statutes. I would therefore overrule Fought and the previous cases and affirm the Commission in its ruling.
ROBERTSON and SULLIVAN, JJ., join this opinion.
PITTMAN, Justice, dissenting:
Believing that a mental injury, in order to be compensable, must be accompanied by physical trauma or must have been caused by something more than the ordinary incidents of employment endured by Billy Eskridge, I respectfully dissent.
Eskridge initiated this action against his employer, Borden, Inc., after blacking out on January 28, 1983, in a cafeteria after work. Eskridge seeks compensation for his mental injury caused by Borden's course of conduct toward him from 1978 to 1983 which allegedly caused his psychological problems culminating with the blackout. It is important to note that Eskridge commenced this action after he had ceased his employment with Borden and was drawing Social Security benefits as well as disability benefits. The Administrative Law Judge found that Eskridge did suffer a compensable injury. Upon review, the majority members of the Workers' Compensation Commission agreed that Eskridge was entitled to compensation benefits for his mental injury. No apportionment was made for his pre-existing condition. One member of the Commission, J. Marshall Lusk, Jr., dissented. The Oktibbeha County Circuit Court affirmed the Commission's order.
I find that the dissenting opinion expressed by Commissioner Lusk, Chairman of the Mississippi Workers' Compensation Commission, is a comprehensive finding and a model opinion regarding the case at bar. Consequently, I adopt a significant portion of his dissent in this matter, to wit:
While the Supreme Court has held mental injuries compensable under the Act, they have done so very narrowly and under certain defined circumstances. Smith and Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985); Johnson v. Gulfport Laundry and Cleaning Co., [249 Miss. 11] 162 So.2d 859 (Miss. 1964). In one of the most recent rulings of occupationally related mental injuries, the Court held that mental injuries unaccompanied by physical trauma must be directly linked to some "untoward event, unusual occurrence," accident or injury incident to employment. Peery, [473 So.2d] at 426. The logical inference in Peery being  usual occurrences and events not unusual or untoward are injuries outside the purview of recovery under the Act.
Further, the Court in Peery, in setting the tone for compensable mental injuries under the Act, reaffirms the requisite burden of proof for establishing an injury from an untoward event:
[W]here the claim is based upon mental and nervous disease, it is viewed with normal suspicion attending claimed disabilities which have no physical cause traceable to objective findings, and the burden of proof ... is greater than in ordinary cases. The accident must be established by evidence bringing it within the realm of probability, and the causal connection with the accident must be shown by *1077 "clear evidence," and must not be remote.

Id. at 425, quoting V. Dunn, Mississippi Workers' Compensation § 114 (3rd ed. 1982).
Not only did the Court continue to carve out in Peery the only exception to the traditional rule of liberal construction of the Act, it specifically held that layoffs and terminations cannot be characterized as unusual occurrences or untoward events when such are rightful or based upon economic reasons. Id. at 426. To do so, the Court stated, would extend benefits to "any employee who suffers depression or anxiety upon being rightfully terminated." Id.

... .
In support of [Company superintendent Laverne] Kinard's testimony [that Eskridge's attitude toward subordinates brought claims of harassment and racial discrimination and that Eskridge was provided reasons upon each demotion], David Hovet testified that upon assuming claimant's former position of plant assistant superintendent, he witnessed and documented claimant's belligerence, lack of cooperation and disruptive behavior in management meetings. Corroborating the testimony of David Hovet, co-employee Gilbert Carmichael stated claimant exhibited a violent temper to employees. He stated claimant's problems with people in the plant were due, in his opinion, to claimant not receiving the recognition claimant wanted from his employees.
The record further reflects testimony of co-employees Charles Orr, Bill McKell and Lydia Lanier, all of whom had served under claimant, is consistent with that of upper management. All testified claimant was difficult, overbearing and would occasionally harass employees. Charles Orr testified claimant's behavior was well known in the plant to such an extent that he was forewarned of claimant's poor disposition upon taking his job as manager of the can shop. Comparing this testimony to that received on behalf of the claimant clearly indicates the insufficiency of evidence supporting claimant's allegation of mental injury. Other than claimant's spouse, only one witness, Janice McReynolds, testified that claimant was actually on the receiving end of harassment by management. All other witnesses either testified to the contrary or did not state a position in the matter.
Further, I find that history provided by [sic] psychiatrist Dr. Melvin Levitch does not accurately or fully reflect the events of claimant's employment as evidenced by the record. The record reflects Dr. Levitch stated his diagnosis of claimant was based on the assumption claimant's history truly reflected the events of his demotions. He stated however that his testimony regarding claimant's condition would change if the facts presented to him were untrue. In determining the probative value of expert medical testimony in mental injury cases, the Commission has broader than usual discretion and may reject such testimony when viewed as equivocal or unconvincing. V. Dunn, Mississippi Workers' Compensation § 114 (3rd ed. Supp. 1982). I find, therefore, Dr. Levitch's testimony lacks probative value and fails to provide the needed causal connection between claimant's employment and his mental illness.
Although it is difficult to assess the probative value of the testimony received in this cause, I am of the opinion there exists sufficient proof claimant's demotions were based upon justifiable cause such that claimant's demotions cannot be characterized as unusual occurrences or untoward events but rather that which is the ordinary incident to employment under the circumstances.
... .
In addition to disagreeing with the Majority Members of the Commission about the compensability of the subject claim, I also have trouble with the lack of apportionment in the Order of the majority. Granted, there is little or no evidence in the record upon which apportionment for pre-existing illness or predisposition of the claimant to a stress-related malady can be based. But, were I in agreement that the "untoward event, unusual occurrence" *1078 requirements of a psychological injury exist in this claim, I would nonetheless require evidence on the subject of pre-existing conditions or predisposition of the claimant to psychological weakness or vulnerability to the supervisory treatment of which he complains. I cannot understand how this subject has remained unaddressed directly by counsel, expert witnesses, the administrative judge or the Majority Members of the Commission.
Stress is a real and significant aspect of everyday life, whether in the workplace or otherwise. To allow workers' compensation awards at one hundred percent in any stress case without a consideration of apportionment, I believe is to ignore an obvious question of how a vast majority of workers navigate in the troubled waters of stressful working conditions.
To extend the Act to find in favor of the claimant would be tantamount to holding that interaction among employees alone may have such devastating effects on workers that disability may result. The ordinary workplace is filled enough with tension and friction between workers as to cause this Commissioner to view mental stress unprovoked by physical injury and not precipitated by an unusual occurrence or untoward event to be incidental to and concomitant with most work activities.
... .
Therefore, for reasons stated herein, I am of the opinion the "order of Administrative Judge" should be reversed and claimant's application for workers' compensation benefits under the Act should be denied. As an alternative, I would remand for an additional hearing to develop more facts concerning claimant's predisposition toward abrasive behavior and to determine any pre-existing mental or emotional disorder.
I am further persuaded by the reasoning of Justice Robertson's dissent in Peery regarding apportionment. Peery, a civil engineer, land surveyor and draftsman with Smith and Sanders, Inc., had experienced mental illness for sixteen years prior to a nervous breakdown which he suffered upon being informed that he was two weeks hence to be laid off. In the case at bar, there is evidence that Eskridge has had health complications since 1976 or 1977. Justice Robertson reasoned in Peery:
I agree that Peery's disability was not caused solely by and did not arise solely out of his employment. Although there is before us no finding of fact to this effect, the record is clear beyond peradventure that Peery began experiencing mental illness as long ago as 1965 and that he had been previously hospitalized in connection with this illness. He was nevertheless wholly functional prior to May 22, 1981. Still, under our law he is not entitled to full benefits but to apportioned benefits. Miss. Code Ann. § 71-3-7 (1972). I would hold to that effect and remand for a finding of the extent of Peery's disability which may be fairly said to be work related and that which is not.
Peery, 473 So.2d at 429.
Miss. Code Ann. § 71-3-7 (1972) provides in part:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
Because Eskridge has not demonstrated any physical trauma or unusual events more than the ordinary incidents of employment, I would find that Eskridge is not entitled to compensation for his mental injury and reverse the order of the Workers' Compensation Commission. But since this Court does find that Eskridge's mental injury is compensable, I would find that an apportionment should be made taking into account his medical complications prior to *1079 becoming disabled and remand for further proceedings to determine the amount.
DAN M. LEE, P.J., joins this dissent.