915 So.2d 14 (2005)
Truman S. McELVEEN, Appellant
v.
CROFT METALS, INC., and Liberty Mutual Insurance Company, Appellants.
No. 2003-WC-01639-COA.
Court of Appeals of Mississippi.
July 26, 2005.
Rehearing Denied November 22, 2005.
*15 John Doyle Moore, Ridgeland, attorney for appellant.
John S. Gonzalez, Gulfport, attorney for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Truman Stanley McElveen (McElveen) was denied workers' compensation benefits by an administrative law judge who determined that he had not proved sufficient causal connection between his employment at Croft Metals, Inc. and his mental breakdown on or about February 12, 1999. This decision was affirmed by both the Mississippi Workers' Compensation Commission and the Circuit Court of Pike County. McElveen now appeals to this Court asserting that (1) the administrative law judge applied an improper standard of proof to his contention that an untoward event occurred; (2) he sustained *16 a work related injury which entitled him to compensation; (3) he was not suffering from a pre-existing disease, handicap, or condition which contributed to his work related injury, and (4) timely and adequate notice of the work related injury was given to the employer. Limited as we are in our scope of appellate review, we, too, affirm.

STATEMENT OF FACTS AND DISPOSITION BELOW
¶ 2. McElveen worked for Croft Metals for thirty-three years until having a nervous breakdown on February 12, 1999, and becoming disabled.[1] At the time of his breakdown, McElveen was an area superintendent, overseeing a total of five production lines consisting of approximately 135 workers. As superintendent, McElveen would receive orders from the production control department, issue the orders to the lead person on each line, and oversee the production of the metal frame window assemblies.
¶ 3. McElveen was first treated for nerves and anxiety in 1985 and given a prescription to help him relax; this prescription was never refilled. He also experienced anxiety on occasion following the death of his father in 1992. Xanax was prescribed and taken on an as needed basis for anxiety. McElveen contends that his breakdown on February 12, 1999, was caused not by any pre-existing medical condition but by the culmination of the hours worked and pressure from his supervisors. McElveen testified that during the nine-week period immediately preceding February 12th, he was required to work ten-to-twelve hours per day Monday through Saturday and eight hours on Sunday. McElveen stated that while overtime was required from time to time, overtime "in this magnitude" was not an ordinary event. He asserted that one or more of his five lines were in overtime production for the entire nine-week period but admitted that if his lines were not in production, there was "not a whole lot" for him to do. Although he had four weeks of vacation time to use, McElveen testified that he was discouraged by his superiors from using his vacation time.[2] McElveen also testified that in 1997, he was given a written warning, the only one in his thirty-three years of employment, by his production manager, Lynn Casey, and that Casey telephoned him shortly before February 1999 and cursed him, stating that when Casey got back "them damn windows better be run."
¶ 4. On Friday, February 12, McElveen's production lines were behind, and his workers were "not doing anything"; by the end of the day, they had produced approximately 350 fewer windows than needed for shipment on Monday. McElveen admitted that he never felt his job was in jeopardy because of the low production. In fact, Charlie Greenlee, McElveen's new production manager, put his hand on McElveen's shoulder and told him to "forget it. Go home and forget it. Don't worry about it.... We'll get it on *17 Monday." According to McElveen he "almost broke down and started crying. [H]e was just at that point." McElveen went home and immediately to bed. His wife, Anna, testified that on the morning of February 13, 1999, she awoke to find her husband "babbling," and "everything that was asked of [him] was a work-related answer no matter what the question was." She took him to the doctor, and he was hospitalized at North Shore Psychiatric Hospital.
¶ 5. McElveen called none of his co-workers as witnesses to corroborate his claims. Three employees, however, were called by Croft Metals concerning working conditions during the time in question. Victor Donati, corporate director of human resources, testified that in the latter part of 1998, employees were required to work substantial overtime to meet an order placed by McCoy Lumber Company. This extensive overtime period, however, ended in November 1998. On November 17, Donati sent a memo to the company president acknowledging that salaried employees, including McElveen, worked twelve-hour days and weekends during the McCoy project and recommending that bonuses be given in recognition of their work; the bonuses were subsequently paid. Donati testified that overtime in this industry was not an unusual occurrence but that "very little" overtime was worked in January and February 1999. Based on a sampling of McElveen's three employees with the most overtime hours, Donati testified that, with 173.3 hours per month being the normal production time for a line in a 4.3 week period, these employees worked an average of 355 hours in October 1998, 264 hours in November 1998, 211 hours in December 1998, 179 hours in January 1999 and 163 hours in February 1999.
¶ 6. T.J. Tobias, one of the five lead persons working under McElveen during the time in question, corroborated Donati's testimony that overtime was not unusual and that a substantial amount of overtime was worked in the latter part of 1998. Tobias testified that he worked all, or more, of the hours that other employees in the department worked and that he did not work any Sundays in January and February of 1999. He stated that production had slowed down considerably in the early part of 1999. Angela Downs, another of McElveen's lead persons, confirmed Tobias's testimony that extensive overtime was worked in October of 1998; however, Downs testified that she had not been required to work any Sundays since that time.
¶ 7. Medical testimony was offered by both McElveen and Croft Metals regarding McElveen's mental condition. Dr. William A. Bloom, McElveen's treating psychiatrist, testified via medical deposition that McElveen was genetically predisposed to bipolar disorder, and that the disorder could be brought out by a multitude of factors. Dr. Bloom was of the opinion that McElveen's work schedule of fourteen-hour days for twelve weeks straight aggravated his bipolar condition and caused him to have the mental breakdown. Dr. Bloom acknowledged, however, that if the history provided by McElveen was not accurate, he would be less confident in his opinion as to the causal relationship. Dr. Bloom testified that he could not be sure whether McElveen would have had a mental breakdown if not for the stress of his job. He admitted, however, that the job stressors suffered by McElveen were not unusual for a manager responsible for meeting production with limited resources. Dr. Bloom acknowledged that a person not suffering from the same predisposition as McElveen would "probably not" have reacted the way McElveen did, given the same stressors. Dr. Bloom testified that McElveen had symptoms of anxiety for six or eight years *18 prior to February 1999 and admitted on cross-examination that it was a "fair assumption" that McElveen's bipolar disorder had been smoldering for a long time. He further admitted that he had never reviewed McElveen's medical records from the 1980s.
¶ 8. Dr. Mark Webb testified via medical deposition on behalf of Croft Metals. Dr. Webb performed an independent medical examination of McElveen on October 4, 2000. Prior to the examination, Dr. Webb, who is board certified in psychiatry, reviewed all of McElveen's known medical records. Dr. Webb concurred with Dr. Bloom that McElveen suffered from bipolar disorder. Dr. Webb also found that McElveen suffered from depression and obsessive-compulsive personality traits.[3] In contrast to Dr. Bloom's opinion that a person is genetically predisposed to bipolar disorder, Dr. Webb testified that a person is born with bipolar disorder. Dr. Webb testified that bipolar disorder can cause a person to amplify stress and, in essence, "make mountains out of molehills." Significantly, Dr. Webb testified that if McElveen was not working the excessive overtime as alleged, there would be no causal relationship between his psychiatric condition and his workplace. Based on McElveen's prior medical history, Dr. Webb was of the opinion that McElveen's difficulties in February of 1999 were not related to his work. Dr. Webb found no correlation between McElveen's duties at work and the fact that he ultimately succumbed to bipolar disorder.
¶ 9. Reviewing all of this testimony and other evidence, including medical records, the administrative law judge determined that McElveen had failed to prove by clear and convincing evidence a sufficient causal connection between his employment and his mental breakdown. He found that McElveen's testimony that he worked for nine consecutive weeks, including weekends, prior to February 12, 1999 was "uncorroborated and ... directly contradicted by the testimony of all other witnesses in this case." The judge determined that, "[e]ven assuming that [McElveen] worked significant overtime prior to February of 1999, it cannot be stated that working overtime created an untoward event, as such term is defined under the Act, because overtime was an ordinary incident of employment at Croft." Regarding the medical testimony, the administrative law judge found that while McElveen's treating psychiatrist believed his condition to have been aggravated by the stress at work, Dr. Bloom did not have the benefit of McElveen's complete medical history and was given "an incorrect history" by McElveen concerning the amount of overtime worked. The judge credited the testimony of Dr. Webb that McElveen's condition was one from which he suffered regardless of his work activity for Croft Metals. Accordingly, he denied McElveen's claim for workers' compensation benefits. The Full Commission thereafter affirmed the order of the administrative law judge. On appeal to the Circuit Court of Pike County, the Honorable Keith Starrett also affirmed, holding that the administrative law judge had applied the proper legal standard and the decision was supported by sufficient, although contested, evidence.

STANDARD OF REVIEW
¶ 10. The scope of this Court's review in worker's compensation cases is *19 "quite limited." KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991). In a claim for workers' compensation, the Commission is the trier of fact, and we may reverse only if we find the order of the Commission to be "clearly erroneous and contrary to the overwhelming weight of the evidence." Smith v. City of Jackson, 792 So.2d 335, 337(¶ 7) (Miss.Ct.App.2001) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). When the evidence is conflicting, "[w]e will not determine where the preponderance lies...." Smith v. Jackson Construction Co., 607 So.2d 1119, 1124 (Miss.1992). If the findings of the Commission are supported by substantial evidence, we must affirm, absent an error of law. Id. at 1124. Even in cases coming from the Commission, however, we review matters of law de novo. KLLM, 589 So.2d at 675; Dillon v. Roadway Express, Inc., 823 So.2d 588, 590(¶ 9) (Miss.Ct.App.2002).

ISSUES AND ANALYSIS
I. WHETHER THE ADMINISTRATIVE LAW JUDGE APPLIED AN IMPROPER STANDARD OF PROOF FOR DETERMINING WHETHER AN UNTOWARD EVENT OCCURRED
¶ 11. Under appropriate circumstances, an employee may be compensated for mental or psychological injury unaccompanied by physical trauma. Smith and Sanders, Inc. v. Peery, 473 So.2d 423, 426 (Miss.1985). In mental injury cases, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury. Id. at 425. To be compensable, the mental injury unaccompanied by physical trauma must have been caused by something more than the ordinary incidents of employment. Brown and Root Constr. Co. v. Duckworth, 475 So.2d 813, 815 (Miss.1985). The mental injury must be caused by some unusual occurrence or untoward event in order to be compensable. Brown and Root Constr. Co., 475 So.2d at 815. In Fought, supra, the Mississippi Supreme Court held that "our law does not compensate disability attendant upon the general stress or normal human wear and tear of the workplace. Where, however, an employee experiences a series of identifiable and extraordinary stressful work connected incidents, benefits may be available." Fought, 523 So.2d at 318. Thus, the question becomes whether this mental injury was connected to the employment and was a result of some untoward event that occurred on the job. The Workers' Compensation Act defines injury and untoward event as:
"Injury" means accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner. Untoward events includes events causing unexpected results. An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment.
Miss.Code. Ann. § 71-3-3(b) (Rev.2000). By the language of the statute, untoward events are not presumed unless death of the employee has occurred. Therefore, both the untoward event and the causal connection of the injury to the employment must be proved by the claimant unless the employee is found dead in the course of employment.
¶ 12. In the instant case, the administrative law judge found that "the claimant has failed to prove by clear and convincing evidence a sufficient causal connection between *20 his employment at Croft Metals and his mental breakdown on or about February 12, 1999." The judge went on to say that "the claimant has failed to prove by clear and convincing evidence that his mental injury resulted from anything other than the ordinary incidents of employment at Croft Metals." McElveen argues that the judge, thus, imposed the "clear and convincing" burden of proof not only with respect to causation but also with respect to the existence, vel non, of an untoward event and that had he applied a "preponderance of the evidence" standard to the second issue, he "clearly would have to find that this amount of overtime was, in fact, an untoward event." We reject this argument.
¶ 13. First, we do not find that McElveen ever challenged the burden of proof below. In oral argument before the circuit court, counsel for McElveen acknowledged that "in order to be compensable, a mental-mental injury must ... the Claimant must show by clear and convincing evidence that there was an untoward or unusual event that occurred and, number two, that the injury is related to the employment. That's a tough burden to overcome...." McElveen appears to have argued not that the administrative law judge applied an incorrect burden of proof regarding the existence of an untoward event but rather that the findings were not supported by substantial evidence. As quoted above, McElveen represented to the circuit judge that clear and convincing evidence was the burden of proof to be applied both as to the existence of an untoward event and causation. While we review issues of law de novo, we find that any error in the burden of proof applied by the administrative law judge was waived by McElveen's failure to assert the error on appeal to the circuit court. The Mississippi Supreme Court has held that "in order to preserve a point for review by the Supreme Court, the point must be presented not only to the commission but also to the circuit court by an assignment of error there by direct or cross-appeal." Sawyer v. Dependents of Head, 510 So.2d 472, 474 (Miss.1987), citing Dunn, Mississippi Workmen's Compensation § 291 (2d edition 1967; 3rd edition 1982); see, e.g., R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021 (Miss.1990). There is nothing in the record to reflect that McElveen ever challenged the burden of proof prior to appeal to this Court; accordingly, we find the issue has not been preserved for review.
¶ 14. Second, we believe that the emphasis of the administrative law judge in the second quoted statement was on the words "resulted from" thereby relating to causation. The statement immediately preceded the judge's determination that McElveen's allegations of extensive overtime for nine consecutive weeks prior to February 12 was "uncorroborated and ... directly contradicted by the testimony of all other witnesses in this case." It was only at the end of the discussion that the judge found that "[e]ven assuming that [McElveen] worked significant overtime prior to February of 1999, it cannot be stated that working overtime created an untoward event, as the term is defined under the Act...." It is clear that the administrative law judge determined, primarily, that McElveen failed to prove causation by clear and convincing evidence and, secondary, that even if he worked significant overtime, that overtime was not an untoward event. The opinion does not reflect what burden of proof the administrative law judge applied in determining that the subject overtime was not an untoward event, however, we cannot say that the result would have been any different had a lesser burden been applied. The administrative law judge clearly credited *21 the testimony of Donati that overtime was an ordinary incident of employment at Croft Metals and rejected McElveen's contention that the magnitude of overtime was unusual. As trier of fact, he was clearly entitled to do so.
¶ 15. For these reasons, we reject McElveen's challenge to the burden of proof utilized by the administrative law judge.
II. WHETHER McELVEEN SUSTAINED A WORK RELATED INJURY WHICH ENTITLED HIM TO COMPENSATION
III. WHETHER McELVEEN WAS NOT SUFFERING FROM A PRE-EXISTING DISEASE, HANDICAP, OR CONDITION WHICH CONTRIBUTED TO HIS WORK RELATED INJURY
¶ 16. McElveen's second and third issues[4] are, in effect, challenges to the finding of the administrative law judge that McElveen had not proved sufficient causal connection between his employment at Croft Metals and his mental breakdown on or about February 12, 1999. As noted above, our standard of review is whether substantial evidence exists in the record to support the findings of the Commission. We find that substantial evidence does, in fact, exist to support the findings and, therefore, affirm.
¶ 17. In determining that McElveen had not proved sufficient causation, the administrative law judge found that McElveen's testimony that he worked for nine consecutive weeks, including weekends, prior to February 12, 1999 was "uncorroborated and ... directly contradicted by the testimony of all other witnesses in this case." Further, he found that McElveen had given his treating psychiatrist, Dr. Bloom, "an incorrect history" concerning the amount of overtime worked. Dr. Bloom acknowledged that if the history provided by McElveen was not accurate, he would be less confident in his opinion that there was a causal relationship between McElveen's condition and the workplace. Further, Dr. Webb testified that if McElveen was not working the excessive overtime as alleged, there would be no causal relationship between his psychiatric condition and his workplace.
¶ 18. The testimony regarding the working conditions at Croft Metals in the nine weeks immediately preceding February 12, 1999 is discussed in detail above. McElveen argues that the magnitude and persistence of the overtime work and his supervisor's berating and belittling him during the nine weeks prior to February 12, 1999 were not ordinary incidents of employment.[5] McElveen's assertion of the substantial overtime worked in those nine weeks was, however, uncorroborated. In fact, the administrative law judge found *22 that his testimony was contradicted by the testimony of all other witnesses. Victor Donati testified that there was "very little" overtime in January and February, with the highest average hours in McElveen's department being 179 and 163, respectively, for January and February. T.J. Tobias and Angela Downs, lead persons working under McElveen, both testified that they could not remember working any Sundays for several months prior to February 1999. McElveen admitted that if his lines were not in production, there was "not a whole lot" for him to do; accordingly, the testimony of two of his lead persons that their lines were not working on Sundays and the testimony of Donati that there was "very little" overtime during that period substantially contradicts McElveen's testimony that he was working excessive overtime. Further, McElveen admitted that within the nine-week period, he had not worked five or six days around the Christmas and New Year's holidays. The administrative law judge's finding that McElveen had given "an incorrect history" to his physician, thereby undermining his physician's opinion as to causation is, therefore, based upon substantial evidence.
¶ 19. Further, in finding insufficient proof of causation, the administrative law judge credited the testimony of Dr. Webb that McElveen's condition was one from which he suffered regardless of his work activity for Croft Metals. Dr. Webb was of the opinion, based on McElveen's prior medical history, which was unavailable to Dr. Bloom, that McElveen's difficulties in February of 1999 were not related to his work. Dr. Webb found no correlation between McElveen's duties at work and the fact that he ultimately succumbed to bipolar disorder. McElveen argues that the testimony of Dr. Bloom establishes that although McElveen was predisposed to bipolar disorder, the stressors of his employment precipitated his mental breakdown. Where conflicting medical testimony is concerned, this Court will affirm the Commission whether the award is for or against the claimant. Spencer v. Tyson Foods, Inc., 869 So.2d 1069, 1075(¶ 28) (Miss.Ct.App.2004) (citing Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 269 (Miss.1966)). We agree with the circuit court that the decision of the administrative law judge, as affirmed by the Commission, was supported by sufficient, although contested, evidence.
¶ 20. We are not without compassion for Mr. McElveen, who by the admission of Croft Metals was an "excellent" employee for the company; on this record, however, we are compelled to affirm the order of the Commission denying workers' compensation benefits.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] As of the date of the hearing before the administrative law judge, McElveen was receiving Social Security disability payments and long term disability payments through a policy paid for in part by Croft Metals. The long term disability payments for McElveen's mental claim, however, will only be available for twenty-four months unless he is institutionalized.
[2] McElveen admitted that he was not prohibited from taking vacation, even when his production lines were working overtime. He had taken two weeks of vacation in 1998 and did not work during the three-or-four day inventory at Christmas 1998, or on New Year's Eve and Day 1998/1999. These Christmas and New Year's holidays were, of course, within the nine weeks immediately preceding McElveen's mental breakdown.
[3] McElveen admitted to Dr. Webb that he was "very perfectionistic [sic] and hard driving, and he put ... a lot of pressure on himself." Further, McElveen stated "that work never told him he could not take off of work, and he would always try to do extra work to do a `perfect job.'"
[4] The fourth issue, whether timely and adequate notice of the work related injury was given to the employer, was not seriously contested by Croft Metals in the court below and not challenged here. Accordingly, we affirm the circuit court's finding that notice was proper.
[5] McElveen argues that since the administrative law judge did not address his allegations regarding the conduct of his superiors this case should be remanded to consider whether these confrontations might be considered untoward events in and of themselves. We reject this contention. The only incident McElveen identified as occurring within the nine-week period leading up to the injury was Casey's cursing over the telephone. McElveen admitted that on February 12th his current production manager put his hand on his shoulder and told him not to worry about the low production. The administrative law judge clearly rejected McElveen's allegations of abuse by his superiors. We find no error in this determination.