ROBERTS, J.,
for the Court.
¶ 1. Mary Woods Townsend worked for Hospital Housekeeping Systems, Inc. (HHS), for several years prior to November 30, 2001. On that day, however, she was injured while emptying a container filled with cleaning supplies. She immediately received treatment for the physical injuries sustained and made a full recovery. However, Townsend later alleged that she suffered from depression and anxiety secondary to the accident. The Mississippi Workers’ Compensation Commission (Commission) found that Townsend was permanently totally disabled and awarded her benefits. HHS appealed the Commission’s decision to the Circuit Court of Lauderdale County, but the decision was affirmed. HHS appeals the circuit court’s ruling and raises several issues that can be reduced to two issues; namely, (1) whether the circuit court held Townsend to the correct burden of proof, and (2) whether the Commission’s holding was supported by substantial evidence.
¶ 2. Finding that the record lacks substantial evidence to support the Commission’s holding, we reverse the finding of compensability for Townsend’s mental injuries and render judgment for HHS.
PROCEDURAL HISTORY
¶ 3. Townsend filed a petition to controvert based upon an incident that occurred on November 30, 2001, while she was working for HHS. She alleged physical and mental injuries stemming from the incident. In HHS’s response, it admitted the compensability of the physical injuries, but denied compensability of the mental injury claims. On August 25, 2005, the matter was heard by an administrative law judge (ALJ) with the Mississippi Workers’ Compensation Commission. Townsend was the sole live witness. The remaining evidence was composed of medical records and depositions. However, no doctor or other medical professional was deposed.
¶ 4. On December 29, 2005, the ALJ issued his opinion and found Townsend to be permanently totally disabled from a mental injury, and he found the mental injury to be caused by the November 30, 2001, incident. The ALJ awarded Townsend permanent-total-disability benefits for 450 weeks beginning on November 30, 2001.
¶ 5. HHS appealed the ALJ’s findings, and the matter was considered by the Commission. The Commission affirmed the ALJ’s opinion without additional findings of fact or conclusions of law. The Commission’s decision was subsequently appealed to the Circuit Court of Lauder-dale County, and ultimately affirmed. From the circuit court’s order, HHS now appeals.
FACTS
¶ 6. Townsend began working for HHS in 1983 as a cleaning person. On November 30, 2001, in furtherance of her employment, she was asked to remove and empty a spray bottle left out by a fellow employee. As she was pouring the contents of the bottle into the trash, the fumes from the liquid caused an allergic reaction, which burned Townsend’s face, took her breath away, caused her eyes to water, and made her feel faint.
¶ 7. Once she regained some semblance of control, Townsend managed to find her supervisor. At this point, Townsend’s face and tongue were swelling, and she was having trouble talking. She was immediately taken to the emergency room at Rush Foundation Hospital where she con *421 tinued to have trouble seeing and breathing. Once she was stabilized, Townsend was transferred to the critical care unit. She continued to receive treatment at Rush by Drs. Eric Bridges and Larry Shea Hailey. Additionally, while Townsend was at Rush, a magnetic resonance image (MRI) of her brain was performed. The MRI revealed a pre-existing area of ischemic infarction in her right posterior parietal lobe. After the MRI and treatment for other conditions unrelated to her exposure to an unknown chemical, Townsend was discharged from Rush on December 7, 2001, with instructions to follow up her treatment with consultations with Dr. Dennis Simms, a general practitioner, and Dr. Rafique Ahmad, a neurologist.
¶ 8. On December 4, 2001, prior to her discharge from Rush, Dr. Ahmad examined Townsend and the results of her MRI. He opined that in 1998 she suffered a stroke with subjective paresthesia in the left arm and leg. He found no evidence of another stroke. Dr. Ahmad also noted that Townsend had an enlarged pituitary gland, and he wanted an additional MRI as a result of her pituitary problems.
¶ 9. Shortly after her discharge from Rush, Townsend saw Dr. Simms. He noted that Townsend was continuing in her recovery from the chemical exposure at work. Dr. Simms wanted to see her again after she saw Dr. James Halsey, a toxicologist, in Birmingham, Alabama. She saw Dr. Halsey on January 16, 2002. At the conclusion of his examination, Dr. Halsey’s diagnosis was as follows:
1[.] Attack of angioedema, likely inhalation of unknown toxin. No neurologic damage attributable to [complication]!;]
2[.] Unrelated pituitary adenoma with elevated prolactin[;]
3[.] Unrelated old rt hemisphere infarct[; and,]
4[.] Multiple symptoms likely due to depression and anger [referable] to the inhalation accident.
Dr. Halsey further stated that “[j]udgment of [maximum medical improvement] for the exposure is that this has occurred for neurology, except for functional symptoms attributable to anger and depression.”
¶ 10. On February 11, 2002, Townsend saw Dr. Simms again. He found that she could return to work, notwithstanding her lingering headaches and weakness. On February 14, 2002, Townsend’s workers’ compensation benefits ceased, and on April 1, 2002, she returned to work for HHS. She continued to work for HHS as a patient advocate until February 19, 2003, when she was terminated.
¶ 11. Townsend also saw Dr. Andrew Parent, a neurologist, on a referral from Dr. Ahmad. Dr. Parent saw Townsend in March 2002. Upon his review of Townsend’s MRI, Dr. Parent noted a left intra-sellar pituitary tumor and a lesion in the right occipital area, which he opined was consistent with either an old infarction/stroke or a low grade glioma. However, he discounted the possibility of glioma based upon the absence of edema.
¶ 12. On August 7, 2002, another MRI was performed on Townsend’s brain, which revealed a 3 cm intra-axial mass in the right parietal lobe that was suspicious for glioma. Dr. Parent continued to treat Townsend throughout 2002 and 2003. On October 6, 2003, Dr. Parent explained to Townsend that the lesion could be a brain tumor, and he recommended surgery so that a biopsy could be taken. Townsend declined to have the surgery.
¶ 13. Throughout the end of 2003 and 2004, Townsend also saw her family physician, Dr. Paul Wilcox. After Townsend complained of chest pains in January 2004, Dr. Wilcox referred her to Jeff Anderson Regional Hospital (JARH) for an echo *422 doppler procedure. Townsend was admitted to JARH on January 31, 2004. Dr. Thomas Plavac, the attending physician, noted that Townsend informed him that she had been diagnosed with a brain tumor in 2001. Indeed, at the conclusion of her stay at JARH, Dr. Plavac diagnosed Townsend with a brain tumor, probably menin-gioma, as a result of a 3 cm intra-axial mass that was evident on a CT scan taken of Townsend’s brain while at JARH.
¶ 14. On March 3, 2004, Townsend began treatment at Weems Mental Health Center at the direction of her attorney. She indicated during the initial interview at Weems that she had been experiencing anxiety and depression ever since her chemical exposure at work. However, during a deposition taken January 27, 2005, Townsend indicated that her anxiety and depression began when she was fired from HHS. Also, during her intake interview Townsend was asked about her medical history. She listed allergies, back and leg pain, hypertension, labored breathing, headaches, and back surgery. She also noted that her father died of kidney failure, and her mother died of heart failure. However, she neither mentioned her diagnosed brain tumor nor her possible stroke. Additionally, none of her other medical records were provided to any doctor at Weems. The intake psychologist at Weems stated that Townsend was “experiencing depression and anxiety secondary to an incident at work where she was exposed to cleaning chemicals. She feels like the incident had adversely changed her life. Her reports of anxiety may be physical in origin due to the inhalation of chemicals and not psychologic. [Townsend] has a [history] of verbal and physical abuse in [two] marriages as well as [the] early loss of a parent which may contribute to her depression.” Townsend continued her treatment at Weems through June 2005. The medical records from Weems show that Townsend consistently indicated at her sessions that the root cause of her depression and anxiety was the exposure to chemicals while working for HHS.
¶ 15. Back on June 30, 2004, Dr. Sonia Ashish-Mishra, a psychiatrist at Weems, saw Townsend. Dr. Ashish-Mishra diagnosed Townsend with dysthymia with a note to rule out a psychotic disorder not otherwise specified and to rule out delusions regarding the chemical exposure. During a follow-up session in September 2004, Dr. Ashish-Mishra stated that Townsend’s “entire thought process persever-ates around her inability to work.”
¶ 16. In March 2005, Townsend was seen by Dr. William Wood. Dr. Wood explained that Dr. Ashish-Mishra’s diagnosis was an “[a]xis I[d]iagnosis of [m]ajor [depressive [disorder.” Dr. Wood stated that he obtained Townsend’s medical history from Townsend concerning the “onset of [Townsend’s] illness while she was employed [by HHS to work] at Rush Hospital stating that she was exposed to a chemical while she was working as a cleaning person.” Townsend continued seeing Dr. Ashish-Mishra, as well as other doctors at Weems; however, her diagnosis was never further specified.
¶ 17. In February 2005, Dr. Mark Webb performed an evaluation of Townsend and examined her medical records at the request of HHS. Dr. Webb noted that Townsend had been diagnosed with a possible brain tumor, a previous stroke, a pituitary tumor, and she had a host of other ailments. He also noted that she had been married twice in the past. Her first marriage was plagued by violence, and at one point, her husband stabbed her while she was pregnant. She subsequently lost the baby. Her second marriage was also physically violent.
*423 ¶ 18. Dr. Webb noted that Townsend stated she was extremely fearful of the brain surgery suggested by Dr. Parent. She claimed to have nightmares and visual hallucinations stemming from the possible surgery. Dr. Webb stated that hallucinations such as those Townsend experienced are typically from organic illnesses such as a stroke. He opined that she was suffering from a psychotic disorder and mood disorder as a result of her stroke. He further stated that while she was battling multiple medical and emotional problems, her previous chemical exposure at work was not a factor in any of them. Therefore, Dr. Webb stated that Townsend was not psychiatrically disabled or impaired so long as she takes her medications and is compliant with her treatment.
ANALYSIS
I. WHETHER THE COMMISSION HELD TOWNSEND TO THE CORRECT STANDARD OF PROOF.
¶ 19. In his opinion finding that Townsend suffered a compensable work-related mental injury as a result of the November 2001 incident, the ALJ failed to mention the burden of proof that Townsend had to overcome. In the typical workers’ compensation case involving a physical work-related injury, the claimant is held to a “fair preponderance of the evidence” standard. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994). However, when the claimant seeks benefits as a result of a compensable mental injury, the burden of proof is raised to clear and convincing evidence of a causal connection between the injury and employment. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988). HHS argues that the ALJ held Townsend to the more common preponderance of the evidence standard rather than the clear and convincing standard accompanying a claim of mental injury. While the fact that the ALJ did not mention any burden of proof is not addressed by Townsend, she does argue that (1) HHS waived the issue of whether the ALJ applied the wrong standard as HHS failed to raise the issue before the Commission or circuit court, and (2) Townsend’s claim only required her to demonstrate a connection between the work-related accident and her mental disability by “clear evidence” rather than clear and convincing evidence.
¶20. We first address Townsend’s claim that HHS waived this issue. In order to preserve an issue for review by this Court or the supreme court the issue must be raised before the Commission and circuit court by direct or cross-appeal. McElveen v. Croft Metals, Inc., 915 So.2d 14, 20(¶ 13) (Miss.Ct.App.2005) (quoting Sawyer v. Dependents of Head, 510 So.2d 472, 474 (Miss.1987)). Townsend claims HHS did not raise the issue of burden of proof before either tribunal. While it is true that HHS did not raise an issue specifically challenging the burden of proof used by the ALJ, HHS did argue before the Commission and circuit court that the ALJ’s decision was not supported by the evidence. We find that such a challenge impliedly includes the issue of whether the ALJ held the claimant to the correct burden of proof. In effect, HHS’s claim was that the ALJ’s decision that Townsend demonstrated by clear and convincing evidence a causal connection between her mental injury and the November 30, 2001, incident was not supported by substantial evidence. Therefore, Townsend’s claim that HHS waived this issue is without merit.
¶ 21. Next, we address the correct burden of proof a claimant must overcome in order to demonstrate a compensable mental claim under the Act. Townsend ar *424 gues that her claim is a “physical/mental” claim requiring “clear evidence” rather than a “mental/mental” claim requiring “clear and convincing evidence” and cites Powers v. Armstrong Tire & Rubber Co., 252 Miss. 717, 723, 173 So.2d 670, 672 (1965) in support of her claim.[1] While Powers held that the causal connection between an industrial accident and a mental injury must be proven by “clear evidence,” a review of this state’s precedent shows that “clear evidence” and “clear and convincing evidence” are used synonymously, and apply to a claimant’s burden of proof under either a mental/mental or physical/mental case.[2] However, with a mental/mental claim, the claimant is also required to show that the mental injury was “caused by something more than the ordinary incidents of employment.” Fought, 523 So.2d at 317.
¶ 22. As to HHS’s claim that the ALJ did not hold Townsend to the appropriate burden of proof, we find the record does not support HHS’s position. W/hile it is true that the ALJ’s opinion did not affirmatively state that Townsend’s burden of proof was clear and convincing evidence, it likewise did not state that the lower burden of a fair preponderance of the evidence was used. Additionally, the opinion does not imply that Townsend was held to the lower burden. In the absence of evidence to the contrary, we must assume that the ALJ held Townsend to the appropriate burden of proof. Riggs v. State, 744 So.2d 365, 370(¶19) (Miss.Ct.App.1999) (citing Moawad v. State, 531 So.2d 632, 635 (Miss.1988)). This issue is without merit.
II. WHETHER SUBSTANTIAL EVIDENCE EXISTS IN THE RECORD TO SUPPORT THE COMMISSION’S ORDER.
¶23. Our standard of review when reviewing an order of the Commission is that the factual findings of the Commission are binding on this Court so long as they are supported by substantial evidence. Hedge, 641 So.2d at 12. This Court will reverse an order of the Commission when such order is clearly erroneous or contrary to the overwhelming weight of the evidence. Id. However, when reviewing questions of law a de novo standard of review is used. ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 45(¶ 10) (Miss.1999). Additionally, if an “[administrative] agency has misapprehended a controlling legal principle, no deference is due.” Id.
¶ 24. In order for the Commission to have found in favor of Townsend it, through its adoption of the ALJ’s opinion, must have determined that Townsend demonstrated though clear and convincing evidence that there was a causal connection between the November 30, 2001, inci *425 dent and her mental problems. When our standard of review is applied in this case, or any case involving the claim that a mental injury is compensable through worker’s compensation benefits, it dictates that there must be substantial evidence for the Commission’s finding that Townsend met her burden of proof. Miss. Employment Sec. Comm’n. v. Bell, 584 So.2d 1270, 1273 (Miss.1991). In the context of reviewing an administrative agency’s decision, the supreme court has defined “substantial evidence” as:
something more than a “mere scintilla” or suspicion. It has also “been defined by this Court as ‘such relevant evidence as reasonable minds might accept as adequate to support a conclusion.’ ” Further, substantial evidence has been described “as that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred.”
Public Employees’ Ret. Sys. v. Howard, 905 So.2d 1279, 1285(¶ 16) (Miss.2005) (internal citations omitted). Therefore, with this standard in mind, we will review the evidence in the record.
¶ 25. After discrediting Dr. Webb’s opinion and determining that “Dr. Ashish-Mishra, and other providers at Weems related Ms. Townsend’s depression and anxiety — at least in part — to the chemical exposure,” the ALJ found “that Ms. Townsend sustained a work-related mental injury on November 30, 2001.” HHS argues that this finding, which was the basis for the ALJ’s determination that Townsend suffered a compensable mental injury, was made in error, and Dr. Ashish-Mishra never related Townsend’s depression to her chemical exposure.
¶ 26. On March 3, 2004, Townsend visited Weems for an initial evaluation. According to the intake form, Townsend indicated she was seeking services for depression and anxiety secondary to the November 30, 2001, incident. At the conclusion of Townsend’s initial evaluation, the intake doctor summarized Townsend’s initial visit as follows:
[Townsend] is a 65 [year old], widowed, African American female experiencing depression and anxiety secondary to an incident at work where she was exposed to cleaning chemicals. She feels like the incident has adversely changed her life. Her reports of anxiety may be physical in origin due to the inhalation of chemicals and not psychogenic. [Townsend] has a [history] of verbal and physical abuse in [two] marriages as well as early loss of a parent which may contribute to her depression.
Townsend was diagnosed as having a “major depressive disorder, single episode, moderate anxiety disorder [not otherwise specified], physical abuse of adult.” However, the root cause of her depression and anxiety was not clearly identified.
¶ 27. Townsend continued to visit medical personnel at Weems on a routine basis throughout the next fifteen months. At each visit, she consistently informed the doctor or nurse whom she saw that her depression was caused by the November 30, 2001, incident. At the conclusion of a June 30, 2004, visit, Dr. Ashish-Mishra stated, “[Townsend] persevates how the exposure to the chemicals at Rush (by report) have affected her.” Dr. Ashish-Mishra’s assessment at the conclusion of this visit was “[d]ysthymia, [rule out] psychotic [disorder not otherwise specified] ( [rule out] delusion [disorder]-regarding chemical exposure).” Similarly, at the conclusion of a September 28, 2004, visit, Dr. Ashish-Mishra stated that Townsend claimed that “she cannot work and she see[s] ‘reflections’ of what happened and she is talking about the chemical exposure that she had at Rush, allegedly.”
*426 ¶ 28. On March 7, 2005, Townsend saw Dr. Wood at Weems. The record indicates that the purpose of this visit was for certification. Dr. Wood stated that he “obtained history from [Townsend] regarding the onset of her illness while employed [by HHS to work] at Rush Hospital stating that she was exposed to chemical[s] while she was working as a cleaning person.” Dr. Wood also stated that Townsend told him “that the doctor said that she would not be able to work again in the future.” Dr. Wood recommended continued therapy-
¶29. Finally, although not mentioned as supportive of the ALJ’s finding of a compensable mental injury, another medical record of note is that of Dr. Halsey, a toxicologist. He saw Townsend approximately a month-and-a-half after the November 30, 2001, incident. After examining Townsend, Dr. Halsey concluded that Townsend had “[m]ultiple symptoms likely due to depression and anger [referable] to the inhalation accident.”
¶ 30. In order for Townsend to have sufficiently demonstrated a causal link between the November 30, 2001, incident and her depression and anxiety, she was required to overcome her burden of proof by clear and convincing evidence. Clear and convincing evidence has been defined as:
that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.
Moran v. Fairley, 919 So.2d 969, 975(¶ 24) (Miss.Ct.App.2005) (quoting Travelhost, Inc. v. Blandford, 68 F.3d 958, 960 (5th Cir.1995)). In fact, “[c]lear and convincing evidence is such a high standard that even the overwhelming weight of the evidence does not rise to the same level.” Id. Such evidence showing the causal connection between Townsend’s mental problems and the November 30, 2001, incident is not present in the record before us.
¶ 31. The record shows that Dr. Ashish-Mishra, the evidentiary lynchpin of the Commission’s findings, diagnosed Townsend with a mental disorder. However, while the Weems medical records show that Townsend consistently attributed her condition to the incident, Dr. Ashish-Mishra never did so. In fact, the Weems medical records seem to indicate that Dr. Ashish-Mishra had some doubt as to whether the chemical exposure occurred at all.[3] Regardless, while the Weems medical records are replete with instances of Townsend linking her mental problems to the chemical exposure, such is not suggested in the Weems medical records save for a summary of Townsend’s initial evaluation. However, even this is couched in terms of uncertainty.[4] Additionally, although his opinion was discredited by the ALJ, Dr. Webb opined that Townsend suffered from many stressors and that her mental problems were the result of her *427 previous stroke, not the November 30, 2001, incident. Townsend must have met her burden of proof without basing it upon only speculation and conjecture. Harrell v. Time Wamer/Capitol Cablevision, 856 So.2d 503, 512(¶ 37) (Miss.Ct.App.2003) (citing Coleman v. Chattanooga Container Corp., 377 So.2d 606, 608 (Miss,1979)). Based on the evidence detailed above, we find that the record lacks substantial evidence to support the Commission’s finding that Townsend’s mental problems were shown to be causally connected to the chemical incident by clear and convincing evidence. Therefore, we reverse the judgment of the circuit court and render this case in favor of HHS.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION. KING, C.J., NOT PARTICIPATING.

. A "physical/mental” injury occurs when "there has been a physical accident or trauma, and the claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis.” 3 Larson’s Workers' Compensation Law, § 56.03(1) (2000). Conversely, a "mental/mental” injury is a mental or nervous injury stemming from mental stimulus, "with no physical component in either the cause or the disabling consequence.” Id. at § 56.06(3).

. The supreme court in Myles v. Rockwell International, 445 So.2d 528, 537 (Miss.1983), applied the "clear evidence” standard to a physical/mental injury, while in Smith and Sanders, Inc. v. Peery, 473 So.2d 423, 425 (Miss.1985), a mental/mental case, the supreme court cited Dunn's Workmen’s Compensation, § 114 (1982) (3rd ed.), and also identified the requisite burden of proof as "clear evidence.” Finally, in Fought, 523 So.2d at 317, another mental/mental case, the supreme court cited the same section from Dunn’s, but nonetheless identified the standard of proof as "clear and convincing.”

. When referring to the chemical exposure, Dr. Ashish-Mishra spoke in terms of doubt, i.e., "the exposure to the chemicals at Rush (by report) have affected [Townsend],” and "[Townsend] is talking about the chemical exposure that she had at Rush, allegedly.” Additionally, part of Dr. Ashish-Mishra's diagnosis was to rule out a delusion disorder regarding the chemical exposure.

. The summary of Townsend’s initial evaluation at Weems concludes with the statement: "[h]er reports of anxiety may be physical in origin due to the inhalation of chemicals and not psychogenic. [Townsend] has a [history] of verbal and physical abuse in [two] marriages as well as early loss of a parent which may contribute to her depression.”