IRVING, J.,
 

 for the Court:
 

 ¶ 1. On September 14, 2007, Brenda Peters filed a petition to controvert, alleging that she had injured her cervical spine while lifting boxes within the course and scope of her employment with Belk, Inc. Peters also alleged that the cervical-spine injury had resulted in depression. Belk and its insurance carrier, Liberty, Mutual
 
 *807
 
 Insurance Company, admitted that Peters had suffered a cervical-spine injury, but disputed the extent of Peters’s disability. Belk and Liberty denied that benefits were owed for any psychological or mental injury. A hearing was held before an administrative judge (AJ), who found that Peters had suffered a psychological injury related to her cervical-spine injury. The AJ concluded that Peters was permanently and totally disabled.
 

 ¶ 2. Belk and Liberty appealed the AJ’s decision to the Mississippi Workers’ Compensation Commission (Commission). The Commission reversed the AJ’s decision, finding that Peters was not permanently disabled or entitled to benefits for any psychological injury. However, the Commission awarded Peters temporary total-disability benefits. Peters appealed the Commission’s decision to the Lee County Circuit Court. The circuit court affirmed the Commission’s decision.
 

 ¶ 3. Feeling aggrieved, Peters appeals and asserts four issues on appeal, which we will consolidate into two issues: (1) whether the Commission applied an incorrect legal standard in denying benefits for Peters’s psychological injury and (2) whether the Commission’s reversal of permanent total-disability benefits and its denial of benefits for Peters’s psychological injury were not supported by substantial evidence and were arbitrary and capricious.
 

 ¶ 4. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 5. On March 12, 2003, Peters sustained an injury while working at a cosmetic counter at Belk. Peters testified that when she arrived at work that morning, she began moving and unpacking boxes of inventory. Later that day, she testified that she began to experience pain in her neck. Peters left work early and sought treatment at the Barnes Crossing Emergency Medical Clinic. Dr. Billy Walton examined Peters at the clinic. He prescribed anti-inflammatory medications and advised Peters to return if her pain continued. Peters returned to work and continued to move boxes. Peters’s neck pain returned, and she went back to the clinic. Dr. Walton ordered an x-ray, which showed some degenerative changes in Peters’s spine. Dr. Walton also ordered an MRI, which confirmed the existence of disk-space narrowing and mild degenerative changes in Peters’s spine.
 

 ¶ 6. Peters was referred to Dr. Thomas McDonald, a neurosurgeon. Dr. McDonald diagnosed Peters with cervical spondylosis and stenosis. Dr. McDonald recommended that Peters use a neurostimulator to relieve pain and muscle spasms, and he placed Peters on light duty with no lifting. On May 5, 2003, Peters visited Dr. McDonald, again complaining of neck pain and headaches. Dr. McDonald took Peters off of work and scheduled a myelo-gram and CT scan of her cervical spine. Additionally, Dr. McDonald prescribed Paxil, an anti-depressant, and Xanax, an anti-anxiety medication. Dr. McDonald did not believe that Peters would benefit from surgery, but he referred Peters to Dr. Louis Rosa for a second opinion. Peters visited Dr. Rosa on May 28, 2003, and Dr. Rosa agreed with Dr. McDonald that surgery would not benefit Peters. On June 13, 2003, Dr. McDonald released Peters to work, noting that Peters had achieved maximum medical improvement. Additionally, Dr. McDonald noted that he saw “no significant injury in this case.”
 

 ¶ 7. On July 29, 2003, Peters saw Dr. Kenan Arnautovic for a neurosurgical evaluation. Dr. Arnautovic reviewed Peters’s previous MRI and CT scans and agreed that they showed degenerative disease in
 
 *808
 
 her cervical spine. Dr. Arnautovic referred Peters to Dr. Roger Cicala for pain treatment. Dr. Cicala determined that Peters had thoratic outlet syndrome, a ro-tator cuff injury, cervical degenerative disease, and left occipital neuralgia. Dr. Ci-cala advised Peters to place her arm in a sling for four to six hours each day and recommended that Peters see an orthopedic shoulder specialist.
 

 ¶ 8. Dr. Arnautovic also referred Peters to Dr. Lance Wright, a neurologist, for further evaluation of her symptoms. Dr. Wright noted that Peters complained of numerous symptoms and that she had difficulty describing them. Additionally, he noted that Peters described her symptoms in a “very histrionic and exaggerated sort of way.” Dr. Wright noted that Peters denied being depressed and that she appeared close to tears during her appointment. Dr. Wright felt that he had nothing he could offer Peters, and he recommended that she follow up with her pain specialist.
 

 ¶ 9. Peters testified that following her visit with Dr. Wright, she began experiencing chest pains, and she consulted Dr. Gerhard Mundinger, a cardiologist and family friend. He recommended that Peters use a cervical collar at night to relieve her neck pain, but he advised Peters that she could continue to work. Dr. Mundinger referred Peters to Dr. Salil Tiwari. Dr. Tiwari noted that Peters’s sensation of pain was “highly exaggerated” and disproportionate to her physical condition. Furthermore, he noted that Peters had difficulty describing the exact nature of her pain. Dr. Tiwari diagnosed Peters with chronic pain and depression and referred her to Dr. Sudhakar Madakasira, a psychiatrist.
 

 ¶ 10. During her visit with Dr. Madaka-sira, Peters advised him that she had seen at least fifteen doctors in eight months, but none had successfully treated her pain. She stated that she was depressed and reported feeling suicidal. Peters stated that she had never suffered from depression prior to her injury. Dr. Madakasira diagnosed Peters with depression and chronic pain and prescribed anti-depressants.
 

 ¶ 11. In December 2003, Dr. Madakasi-ra had Peters admitted to St. Dominic Hospital in Jackson, Mississippi, to regulate her medications and treat her depression. Peters was hospitalized for ten days. While hospitalized, Dr. Carroll McLeod evaluated Peters and recommended a course of steroid injections, which seemed to improve Peters’s neck pain. Dr. Jacob Mathis, a neurosurgeon, also evaluated Peters while she was hospitalized. He diagnosed Peters with cervical spondylosis, but he determined that she would not benefit from surgery. In Peters’s discharge summary, Dr. Madakasira diagnosed Peters with major depressive disorder and psychosomatic pain. He further noted that Peters was “totally fixated on her pain.”
 

 ¶ 12. Peters returned to work in January 2004, but her position at the cosmetics counter had been filled in her absence, and Belk transferred her to the clearance warehouse. Later, Peters was transferred to the fragrance counter, but the fragrances irritated her sinuses, and she requested a transfer to the dress department. Peters then complained that the dresses were too heavy to lift, and she requested a transfer to the sportswear department. Belk accommodated each of Peters’s requests.
 

 ¶ 13. In November 2004, Peters requested three days off to have a colonosco-py in Jackson, Mississippi. Peters presented her manager with a doctor’s note, but she was already scheduled to work during Belk’s charity sales event. Belk’s human resource manager, Kraig Crump-
 
 *809
 
 ton, called Peters’s doctor and confirmed that Peters only needed one day off for the procedure. Crumpton approached Peters about her leave request, and he offered to allow Peters to work a later shift the day after her appointment, but Peters insisted that she needed three days off. Crumpton informed Peters that refusal to work her scheduled shift constituted grounds for termination. Peters refused to work her shift, and Belk terminated her on November 10, 2004.
 

 ¶ 14. In December 2005, Dr. Madakasi-ra admitted Peters to the Psycamore Partial Hospital Program for intensive outpatient psychiatric therapy. Peters was discharged from the program on April 26, 2006, but Dr. Madakasira noted that Peters had seen little improvement in her symptoms and gave her a poor prognosis for recovery. He further noted that he considered Peters permanently and totally disabled.
 

 ¶ 15. On February 11, 2005, Dr. David Collipp evaluated Peters at the request of Belk and Liberty. Dr. Collipp acknowledged that Peters suffered from depression, but he opined that Peters’s depression was not caused by her work-related injury. Dr. Collipp agreed that Peters had cervical spondylosis, but he believed that it was due to arthritis and not caused or exacerbated by lifting. Dr. Collipp determined that Peters had reached maximum medical improvement from her cervical strain as of April 2003 and that she had no permanent impairment.
 

 ¶ 16. On May 11, 2005, Dr. Mark Webb evaluated Peters, also at the request of Belk and Liberty. Dr. Webb noted in his medical report that Peters had seen multiple doctors, but she had experienced little relief for her symptoms. Dr. Webb concluded that Peters suffered from hypochondriasis and exhibited histrionic personality traits. While Dr. Webb recommended continued psychiatric treatment, he concluded that Peters’s personality traits likely arose during childhood and were not work- or incident-related. Furthermore, he did not believe that Peters was psychiatrically disabled and assigned no psychiatric impairment rating.
 

 ¶ 17. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 18. An appellate court’s standard of review in a workers’ compensation claim is well settled:
 

 Appellate courts are bound by the decision of the Mississippi Workers’ Compensation Commission if the Commission’s findings of fact and order are supported by substantial evidence.
 
 Fought v. Stuart C. Irby Co.,
 
 523 So.2d 314, 317 (Miss.1988). “This is so, even though the evidence would convince [the reviewing court] otherwise, were [it] the fact finder.”
 
 Id.
 
 (citations omitted). “Stated differently, [the reviewing court] will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.”
 
 Id.
 
 “A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing- court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.”
 
 Weatherspoon v. Croft Metals, Inc.,
 
 853 So.2d 776, 780 [ (¶ 17) ] (Miss.2003) (citations omitted).
 

 Hardaway Co. v. Bradley,
 
 887 So.2d 793, 795 (¶ 11) (Miss.2004).
 

 
 *810
 

 1. Claimant’s Burden of Proof
 

 ¶ 19. Peters argues that the Commission improperly evaluated the evidence of her psychological injury under the “clear and convincing” standard. However, “a review of this state’s precedent shows that ‘clear evidence’ and ‘clear and convincing evidence’ are used synonymously, and apply to a claimant’s burden of proof under either a mental/mental or physical/mental case.”
 
 Hosp. Housekeeping Sys., Inc. v. Townsend,
 
 993 So.2d 418, 424 (¶ 21) (Miss.Ct.App.2008).
 

 ¶ 20. In reviewing Peters’s claim, the Commission stated that “the [claimant failed to present clear and convincing evidence that she sustained a psychological overlay causally related to her cervical strain, and therefore, any disability associated with [the][c]laimant’s psychological problems is irrelevant.” Because this Court held in
 
 Townsend
 
 that the “clear and convincing evidence” and “clear evidence” standards are synonymous, Peters’s assignment of error is without merit.
 

 2. Commission’s Decision Regarding Peters’s Depression and Permanent Disability
 

 ¶21. Peters also argues that the Commission’s denial of benefits for her depression and its finding that she was not permanently and totally disabled are not supported by substantial evidence and, consequently, are arbitrary and capricious.
 

 ¶ 22. The Commission found that Peters had failed to present clear-and-convincing evidence that her depression was causally related to her cervical strain. The Commission noted that the only evidence that Peters presented in support of her claim that her depression was causally related to her physical injury came from Dr. Madakasira, Peters’s psychiatrist. In his deposition testimony, Dr. Madakasira stated that most patients with Peters’s level of depression and emotional instability are not able to work. While Dr. Mada-kasira testified that he believed that Peters’s depression was related to her work injury, he admitted that his belief was “speculation.” Dr. Collipp and Dr. Webb, who evaluated Peters at the request of Belk and Liberty, both opined that there was no causal relation between Peters’s depression and her work-related injury.
 

 ¶ 23. The Mississippi Supreme Court has stated that when examining conflicting opinions by medical experts, “it is not the role of the [reviewing court] to determine where the preponderance of evidence lies.... ”
 
 Raytheon Aerospace Support Servs. v. Miller,
 
 861 So.2d 330, 335 (¶ 11) (Miss.2003) (quoting
 
 Hale v. Ruleville Health Care Ctr.,
 
 687 So.2d 1221, 1224-25 (Miss.1997)). Instead, “it is presumed that the Commission as trier of fact has previously determined which evidence is credible and which evidence is not.”
 
 Id.
 
 (quoting
 
 Hale,
 
 687 So.2d at 1224-25). Our supreme court further stated that “whenever the expert evidence is conflicting, [the reviewing court] will affirm the Com-missionfs decision] whether the award is for or against the claimant.”
 
 Id.
 
 at 336 (¶ 13) (quoting
 
 Kersh v. Greenville Sheet Metal Works,
 
 192 So.2d 266, 268 (Miss.1966)). Given our deferential standard of review and the Commission’s position as the ultimate fact-finder, we do not find that the Commission erred in relying on the opinions of Dr. Collipp and Dr. Webb, especially when Dr. Madakasira admitted that his conclusions were mere speculation. As such, we find that substantial evidence supports the Commission’s finding that Peters failed to present sufficient evidence that her depression was causally related to her work injury.
 

 ¶ 24. Peters seems to rely solely on her depression in support of her claim of permanent disability, as no physician assigned
 
 *811
 
 a permanent impairment rating to her cervical strain. However, as discussed above, Peters’s depression was not causally related to her on-the-job injury. As such, we find that the Commission’s determination that Peters’s was not permanently and totally disabled is supported by substantial evidence. This issue lacks merit.
 

 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. BARNES AND MAXWELL, JJ„ NOT PARTICIPATING.