JAMES, J.,
for the Court:
¶ 1. The Mississippi Department of Public Safety/Bureau of Narcotics (MBN) appeals the Hinds County Circuit Court’s affirmance of the Mississippi Workers’ Compensation Commission’s decision, which awarded benefits to Elisha Adcox for post-traumatic stress disorder (PTSD) resulting from her duties on the Mississippi Gulf Coast in the aftermath of Hurricane Katrina. MBN raises the following issues on appeal: (1) whether the circuit court erred in affirming the Commission’s finding that Adcox’s Katrina experience caused her to suffer PTSD; and (2) whether the Commission erred in finding the medical testimony of Dr. Mark Webb unpersuasive.
FACTS AND PROCEDURAL HISTORY
¶ 2. Adcox began working as a contract agent with MBN in 1989, and became a full-time agent in 1993. Her work with MBN involved undercover operations, the execution of search warrants, participation in drug raids, making arrests, and testifying in court.
¶ 3. Adcox was treated for two weeks at an out-of-state facility for PTSD after her partner was shot during a raid in 1990, after which she returned to full duty. Ad-cox has been treated for chronic migraine headaches by Dr. Ruth Fredericks since 2001. In April 2003, Adcox injured her neck in a motor-vehicle accident. In 2004, Adcox was hospitalized after inhaling chemicals during a raid on a methamphetamine lab. Adcox testified that she did not miss any work during the period between her treatment for the 2003 neck injury and her assignment to duty on the Gulf Coast related to Hurricane Katrina in August 2005.
¶4. In August 2005, Adcox and other agents were sent to the Mississippi Gulf *196 Coast to assist in Katrina relief efforts. Adcox arrived on the Coast the Saturday prior to Katrina’s landfall to assist local law enforcement with traffic control during the evacuation. Adcox and the other agents spent the duration of the storm at Camp Shelby outside Hattiesburg, Mississippi, returning to Gulfport, Mississippi, the morning after Katrina’s landfall. According to Adcox, her duties included assisting local law enforcement in providing security against looters, searching for and rescuing survivors, and searching for and recovering bodies.
¶ 5. Adcox testified that in 2006, she began having panic attacks and flashbacks of death and bodies from her Katrina experience and guilt over having to refuse food and water to Katrina survivors. Dr. Fredericks, who treated Adcox for a headache condition, suggested that Adcox seek psychiatric care for her post-Katrina difficulties. On January 24, 2006, Adcox began treatment at Region 8 Mental Health Center. There, Adcox was treated by Nina Williams, a licensed therapist, William Johnson, a psychiatric nurse practitioner, and Dr. Stanley Russell, a psychiatrist. Initially, Adcox was treated primarily by Williams, with regular oversight and evaluation by Dr. Russell. In April 2008, Johnson took over Dr. Russell’s care responsibilities in collaboration with Dr. Paul McGinnis, a psychiatrist. Following her initial visit, Adcox was diagnosed with PTSD by both Williams and Dr. Russell.
¶ 6. Adcox first filed a petition to controvert on June 1, 2006, alleging that, as of February 2005, her work had aggravated injuries to her head and neck originally incurred in a motor-vehicle accident on April 9, 2003. This claim was docketed as Claim J-5177. MBN answered with a denial.
¶ 7. Adcox then filed a petition to controvert on November 9, 2006, alleging a “continuing injury as of August 30, 2005, resulting from her service on the Mississippi Gulf Coast in the aftermath of Hurricane Katrina.” This claim was docketed as Claim J-6249. MBN again answered with a denial. On January 25, 2007, Adcox filed an amended petition to controvert in which she expanded her description of her alleged injury of August 30, 2005, as follows: “Depression, post-traumatic stress disorder. Neck progressively getting worse. Recently became disabling. Especially in a[m]eth [l]ab bust .... and after working in Katrina aftermath.” Adcox erroneously cited February 2004 as the date of the “meth lab bust.” MBN answered with another denial.
¶8. On October 5, 2007, Adcox filed another amended petition to controvert in Claim J-6249, alleging that her Katrina duty had aggravated the neck injury from the March 9, 2003 motor-vehicle accident and caused her to suffer PTSD.
¶ 9. On March 11, 2008, MBN filed a motion to dismiss Claim J-5177, arguing that no injury had occurred in February 2005 and asserting that Adcox had confused her dates and must have intended to refer to the chemical-exposer incident that occurred during a February 5, 2004 drug bust for which no claim had been filed. MBN consulted Dr. Webb for a second opinion. Dr. Webb examined Adcox on January 7, 2009. Dr. Webb found that Adcox did not suffer from PTSD.
¶ 10. A hearing before an administrative judge (AJ) was set. Prior to the hearing, the parties agreed to the following stipulations: that Claim J-5177 would be voluntarily dismissed; that if Claim J-6249 was found to be compensable, Adcox would be entitled to the maximum amount of temporary total disability benefits; and that General Exhibits 1-12 were admissi *197 ble in evidence.[1]
¶ 11. A hearing before an AJ was held on September 28, 2009. At the hearing, the AJ heard testimony from Adcox and from Bobby Grimes, commander of enforcement at MBN from 2005 to 2006, who testified on behalf of MBN. After the hearing, the depositions of Dr. Russell, Johnson, and Williams were marked and admitted as General Exhibits 13-15, allowing the record to be closed as of November 2, 2009.
¶ 12. The AJ held that Adcox failed to prove that her work on the Gulf Coast aggravated or contributed to a worsening of preexisting headaches and neck pain, but Adcox did prove by clear and convincing evidence that her work on the Gulf Coast caused her to suffer PTSD. The AJ awarded Adcox permanent total disability benefits as a result of her PTSD. Both parties appealed and the Commission affirmed. MBN then appealed to the circuit court, which affirmed. MBN now appeals to this Court. Finding no error, we affirm.
DISCUSSION
¶ 13. This Court has summarized the standard of review in workers’ compensation cases:
The standard of review in appeals of workers’ compensation cases is limited; this Court must determine only whether the decision of the Commission is supported by substantial evidence and whether the law was correctly applied. The Commission sits as the ultimate finder of facts; its findings are subject to normal deferential standards upon review. Because our review is limited, we will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious. This Court maintains a deferential standard even when we would have been persuaded to rule otherwise if we had been the fact-finder.
Brock v. Wal-Mart, 105 So.3d 1151, 1155 (¶ 10) (Miss.Ct.App.2012) (internal citations and quotations omitted).
I. Whether the circuit court erred in affirming the Commission’s finding that Adcox’s Katrina experience caused her to suffer PTSD.
¶ 14. MBN argues that the circuit court erred in affirming the Commission’s finding that Adcox suffered from PTSD. Particularly, MBN asserts that Adcox does not fit the diagnostic criteria set out in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), in that her Katrina experience did not involve an actual threat of death or injury.
¶ 15. “When our standard of review is applied to any case involving the claim that a mental injury is compensable through worker’s compensation benefits, it dictates that there must be substantial evidence for the Commission’s finding that a claimant met the burden of proof.” Scott Colson’s Shop Inc. v. Harris, 67 So.3d 841, 848 (¶ 20) (Miss.Ct.App.2011) (quoting Hosp. Housekeeping Sys. Inc. v. Townsend, 993 So.2d 418, 425 (¶24) (Miss.Ct.App.2008)). In reviewing an administra *198 tive agency’s decision, “substantial evidence” is “something more than a ‘mere scintilla’ or suspicion.” Id. “Substantial evidence has also been defined as such relevant evidence as reasonable minds might accept as adequate to support a conclusion .... [or] that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred.” Id. (quotations omitted).
¶ 16. Adcox has raised a “mental/mental” claim for workers’ compensation. A mental/mental injury has been described as an injury “stemming from mental stimulus, ‘with no physical component in either the cause or the disabling consequence.’ ” Townsend, 993 So.2d at 424 n. 1 (quoting 8 Larson’s Workers’ Compensation Law § 56.06(3) (2000)). For an injury that is unaccompanied by physical trauma, the claimant “must prove by clear and convincing evidence that he or she suffered from a disabling mental injury which was either caused, contributed to or aggravated by some unusual occurrence or untoward event in order to be compensable.” Daniels v. Peco Foods of Miss. Inc., 980 So.2d 360, 363 (¶ 10) (Miss.Ct.App.2008) (quoting Kirk v. K-Mart Corp., 838 So.2d 1007, 1010 (¶ 17) (Miss.Ct.App.2003)). Stated another way, the claimant “must show [that] something more than the ordinary incidents of employment occurred.” Kirk, 838 So.2d at 1010 (¶ 17). Thus, Adcox is required to demonstrate by clear and convincing evidence a casual link between her diagnosis of PTSD and her work-related Katrina experience. Harris, 67 So.3d at 848 (¶ 21). Clear and convincing evidence has been defined as
that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.
Id. at 849 (¶ 21) (quoting Moran v. Fairley, 919 So.2d 969, 975 (¶24) (Miss.Ct.App.2005)).
¶ 17. Upon reviewing the record evidence and the Commission’s decision, within the bounds of the appropriate standard of review, we find that there was substantial evidence to support the Commission’s conclusion that Adcox presented clear and convincing evidence that her PTSD was casually connected to her Katrina experience.
¶ 18. Adcox testified that she arrived on the Coast in the days prior to Hurricane Katrina to assist in the evacuation. Upon returning to the Coast around 4 a.m. on August 30, 2005, she and other agents began assisting other law enforcement authorities by providing security against looters, conducting search and rescue, and recovering dead bodies. This continued for the next several days, with Adcox and other agents working twenty hours per day, during which time she was surrounded by the smell of death and dead bodies. Adcox stated she personally observed many dead bodies and, on one occasion, while climbing through the window of a house, stepped on a dead body. She at first slept on the floor of the command center, and later slept in her car in fear of rats and snakes. Adcox testified that in 2006, she began having panic attacks and flashbacks of death and dead bodies and of having to refuse food and water to Katrina survivors.
¶ 19. In his deposition testimony, Dr. Russell testified that Adcox began treatment at Region 8 Mental Health Center on January 24, 2006. Following her initial visit Adcox was diagnosed with PTSD. Dr. Russell explained that he applied the diag- *199 nostie criteria set out in the DSM-IV and that Adcox unquestionably met the diagnostic criteria for PTSD, finding that her Katrina experience qualified as a traumatic event under the criteria. Particularly, Dr. Russell pointed to Adcox’s inadvertent discovery of a body in a vacant house as a “traumatic event for her.” Dr. Russell stated that Adcox’s Katrina experience was “the straw that broke the camel’s back,” combining with her preexisting headaches, neck pain, anxiety, and depression-rendering her disabled. Dr. Russell testified that his diagnosis was based on a reasonable degree of medical probability.
¶ 20. Dr. Russell also testified that he disagreed with the opinion of Dr. Webb, the psychiatrist engaged by MBN to evaluate Adcox. Dr. Russell stated that, in Ms opinion, Dr. Webb failed to consider the full range of diagnostic criteria set forth in the DSM-IV.
¶ 21. Williams also testified through deposition testimony. Williams stated that Adcox presented one of the most severe cases of PTSD she had ever seen as a therapist, and that Adcox would probably never be able to hold a full-time or part-time job.
¶ 22. The Commission found:
[Adcox’s] experience on the Coast post-Katrina involved unusual occurrences and/or untoward events beyond the ordinary experience of her employment, and she has proved by clear and convincing evidence, through her own testimony and the expert opinions of her primary treating mental health providers at Region 8, that she has suffered a compen-sable case of PTSD as a result of that Coast experience.
¶ 28. Considering this evidence, Adcox sufficiently demonstrated, by clear and convincing evidence, a casual link between her PTSD and her work-related Katrina experience. Accordingly, we find no error in the Commission’s finding of a compensa-ble mental injury. Thus this issue is without merit.
¶ 24. MBN also argues that Adcox’s current disability is attributable to her preexisting medical history rather than her Katrina experience. Having found that there was substantial evidence to supporting the Commission’s finding that Ad-cox suffered from PTSD as a result her work-related Katrina experience, we find this argument to be without merit.
II. Whether the Commission erred in finding the medical testimony of Dr. Webb unpersuasive.
¶25. MBN argues that Dr. Webb’s evaluation report should have been considered and given greater weight. Dr. Webb evaluated Adcox on behalf of MBN, and his independent medical evaluation was submitted into evidence. Dr. Webb found that Adcox’s disability arose from her long history of severe, chronic, and documented physical pain. Dr. Webb further concluded that Adcox was not suffering from PTSD, principally because, during her Katrina work, there was “no imminent danger to her or a loved one.” The AJ found that “as pointed out by both Dr. Russell and Ms. Williams, imminent danger to the patient or a loved one is not required for a diagnosis of PTSD under the DSM-IV, so Dr. Webb’s opinion in that regard is without any probative value.” Likewise, the Commission found Dr. Webb’s testimony “unpersuasive at best.”
¶ 26. The Mississippi Supreme Court has held that “[w]here medical expert testimony is concerned, this Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission's judgment] whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d *200 330, 336 (¶ 13) (Miss.2003) (quoting Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). Here, Dr. Webb’s opinion conflicts with the opinions of Dr. Russell and Williams. As stated above, we give deference to the decision of the Commission and will not disturb that decision so long as it is supported by substantial evidence. Having found that the Commission’s decision to award Adcox benefits for PTSD resulting from her work during Hurricane Katrina was supported by substantial evidence, we find this issue to be without merit.
¶ 27. The dissenting opinion cites to our precedent in Barfield v. Mississippi State Hospital, 120 So.3d 461 (Miss.Ct.App.2013) and Harris, 67 So.3d 841. In both Barfield and Harris, the burden of proof for a compensable mental injury is clear and convincing evidence. We apply the same burden here. The AJ found that the claimant proved by clear and convincing evidence that her injury caused her to suffer PTSD. That finding was upheld by the Commission. Our decision in this case does not alter the burden of proof for a compensable mental injury.
¶ 28. The dissenting opinion asserts that Adcox failed to meet her burden of proof to show, by clear and convincing evidence, a casual connection between her mental injuries and her employment. In support of this argument, the dissenting opinion states that Adcox’s Katrina experience was not a qualifying event for PTSD as set forth in the diagnosis criteria in the DSM-IV because neither Adcox, her family members, nor close associates were under a direct threat of injury or death. However, direct threat of injury or death to the patient, the patient’s family members, or the patient’s close associates is not the only criteria set forth in DSM-IV. The DSM-IV also includes “witnessing an event that involves death, injury, or a threat to the physical integrity of another....” Both Williams and Dr. Russell testified that Adcox’s Katrina experience, especially her inadvertent discovery of a dead body in an abandoned building, was a qualifying traumatic experience for her. As to the medical opinion of Dr. Webb, the dissenting opinion would have us reject the medical testimony of Dr. Russell and Williams in favor of Dr. Webb. However, we again note that our standard of review is limited. As we have stated above, the Commission sits as the ultimate fact-finder, and we “maintain a deferential standard even when we would have been persuaded otherwise if we had been the fact-finder.” Brock, 105 So.3d at 1155 (¶ 10). Furthermore, as we note above, when expert medical testimony is conflicting, “the Court will affirm the Commission's judgment] whether the award is for or against the claimant.” Raytheon Aerospace Servs. v. Miller, 861 So.2d at 336 (¶ 13). Accordingly, the judgment of the circuit court is affirmed.
¶ 29. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. General Exhibits 1-12 consisted of Adcox’s video deposition and the medical records from several physicians. Many of the medical records were relevant to Adcox’s claim that her Katrina experience aggravated her preexisting headache and neck conditions. The AJ ultimately found that claim to be noncom-pensable, and that ruling is not before us on appeal. Relevant to the PTSD claim were the medical records of Dr. Russell (General Exhibits 8-10); the independent medical evaluation of Dr. Webb (General Exhibit 11); and Adcox’s video deposition (General Exhibit 12).