JAMES, J.,
for the Court:
¶ 1. Tony Barfield filed a claim for workers’ compensation benefits against the Mississippi State Hospital (MSH) following injuries he sustained from a work-related incident. In addition to physical injuries, Barfield claimed that he suffered from post-traumatic stress disorder (PTSD) and other psychological injuries stemming from the incident. The administrative judge (AJ) found that Barfield suffered physical and psychological injuries from the incident, and that his psychological injury rendered him permanently and totally disabled. The Mississippi Workers’ Compensation Commission (Commission) upheld the AJ’s finding of a psychological overlay resulting from Barfield’s work injury, but reversed the AJ’s finding of permanent and total disability. Finding that Barfield was only temporarily totally disabled, the Commission reduced Barfield’s award of disability benefits.
¶ 2. From this order, both parties present separate issues before this Court. Barfield appeals the decision of the Commission to reduce his disability benefits, arguing that the Commission applied an improper legal standard in finding that he was only temporarily disabled. MSH cross-appeals the Commission’s findings of a psychological overlay and temporary total disability. Finding the order of the Commission is based on substantial evidence, we affirm.
*463 FACTS AND PROCEDURAL HISTORY
¶ 3. Barfield began working for MSH in 1982 as a direct-care employee. At some point, Barfield was promoted to a supervisory position as a mental-health technician. On July 1, 2004, Barfield was called to assist an employee with a mentally-ill patient who weighed approximately 350 pounds. While assisting the employee, Barfield was violently attacked by the patient. The patient hit Barfield in the head, knocking him to the concrete floor. The patient then sat on top of Barfield and struck him in the head repeatedly. Security guards attempted to restrain the patient and accidentally fell on top of Bar-field. During the melee, Barfield’s head hit the concrete floor multiple times. Bar-field testified that he could not remember what happened next. That same day, Bar-field was treated by Dr. Tim Morris at the Baptist Medical Clinic for back pain, arm pain, and a headache. Dr. Morris diagnosed Barfield with multiple contusions and myalgia, and instructed Barfield not to return to work until the following week.
¶ 4. Four months later, Barfield continued to experience severe headaches and pain in his right foot from the attack. Barfield also began to experience anxiety and insomnia. On November 11, 2004, Barfield was examined by his family physician, Dr. Steven Easley. Dr Easley had been Barfield’s primary physician for nearly fourteen years prior to Barfield’s attack. Barfield informed Dr. Easley about the violent attack, and stated that he was having frequent nightmares about the incident. He also stated that he had not returned to work after the incident because the patient who had attacked him was still a resident at MSH. According to Barfield, he resigned from his job out of fear that the patient would attack him again. Over the next month, Dr. Easley continued to monitor Barfield’s mental status and foot injury. Dr. Easley noted that Barfield had exhibited signs of depression since the incident. Dr. Easley diagnosed Barfield with PTSD, and decided that he needed further treatment. He referred Barfield to Dr. John Norton, a board-certified psychiatrist and neurologist. On December 28, 2004, Barfield filed a petition to controvert.
¶ 5. Dr. Norton began treating Barfield on May 9, 2005. Barfield informed Dr. Norton about the attack, and reported having persistent headaches and anxiety as a result of the incident. Dr. Norton noted that Barfield displayed symptoms of paranoia, anxiety, and memory loss. After nearly two months of treatment, Dr. Norton diagnosed Barfield with a traumatic brain injury and depression. Dr. Norton also noted that the violent attack on July 1, 2004, caused or contributed to Barfield’s psychological condition. According to Dr. Norton, as of June 24, 2005, Barfield had reached his maximum medical improvement, but was not able to return to work full-time.[1]
¶ 6. Thereafter, Barfield applied for Social Security disability benefits. As part of his application, Barfield was examined by Dr. Teresa Elias-Hooper. During the evaluation, Dr. Elias-Hooper administered a series of tests along with a comprehensive mental-status examination. At the end of the evaluation, Dr. Elias-Hooper concluded that Barfield displayed symptoms of PTSD and depression. She also opined that Barfield was unable to “function full-time in any normal work-related environment.” On December 6, 2005, Bar- *464 field was examined by Dr. Andrew Yates as part of his application for Social Security disability benefits. Dr. Yates concluded that Barfield suffered from post-traumatic stress syndrome or traumatic brain injury, with some depression and paranoia.
¶ 7. To determine the extent of Bar-field’s psychological injury, MSH ordered Barfield to undergo an evaluation with Dr. Mark Webb. During the assessment, Dr. Webb noted that Barfield exhibited signs of “abnormal personality traits,” but not to the extent of having a severe psychological impairment. At the end of the assessment, Dr. Webb concluded that Barfield did not suffer from PTSD or any other psychiatric illness. Dr. Webb also concluded that Barfield had “no permanent impairment or restrictions ... relating] to the [July 1, 2004] incident.” Dr. Webb based his conclusions on the results of the assessment, which indicated that Barfield had no symptoms of anxiety and no loss of functioning or enjoyment of life.
¶ 8. At the request of the Commission, clinical psychologist Dr. James Irby evaluated Barfield on January 28, 2010. After reviewing Barfield’s medical records and administering a series of cognitive tests over a two-day period, Dr. Irby opined that Barfield did not have PTSD or a traumatic brain injury. According to Dr. Irby, Barfield did not exhibit any factors that are indicative of a traumatic brain injury, including: “1) loss of consciousness, 2) loss of memory for the events surrounding the impact to the head[,] and/or [3) ] an alteration of consciousness.” Dr. Irby also concluded that Barfield had “no significant cognitive deficits as a result of the incident on July 1, 2004.”
¶ 9. Following a hearing on the matter, the AJ found that Barfield had proven by clear and convincing evidence that his psychological condition was caused by the work incident on July 1, 2004. The AJ also found that Barfield’s psychological injury rendered him permanently and totally disabled, and ordered MSH to pay Bar-field permanent disability benefits of $341 a week, beginning on July 2, 2004, and continuing for 450 weeks. MSH appealed the AJ’s decision to the Commission. On September 21, 2011, the Commission reversed the order of the AJ, and found that Barfield was temporarily and totally disabled as a result of his psychological injury. The Commission ordered MSH to pay Barfield temporary disability benefits of $341 per week from December 26, 2004, until June 24, 2005;[2] and permanent partial disability benefits of $181.57 per week for 450 weeks beginning June 25, 2005.
¶ 10. Both parties now seek relief from the order of the Commission. Barfield seeks reinstatement of the AJ’s order, arguing the Commission applied an improper legal standard in finding that Barfield was temporarily and totally disabled. MSH seeks reversal of the Commission’s finding of a psychological injury resulting from the incident. MSH also appeals the Commission’s finding that Barfield is temporarily and totally disabled as result of the incident. We discuss each of these issues below.
STANDARD OF REVIEW
¶ 11. In workers’ compensation cases, the scope of review is limited. McElveen v. Croft Metals, Inc., 915 So.2d 14, 18-19 (¶ 10) (Miss.Ct.App.2005) (citing KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991)). The Commission is the trier and finder of fact, and its decision will only *465 be overturned if it is arbitrary or capricious, is based on an erroneous application of the law, or is unsupported by the evidence. Scott Colson’s Shop, Inc. v. Harris, 67 So.3d 841, 844 (¶ 9) (Miss.Ct.App.2011). When a workers’ compensation case is appealed to the Commission, the decision of the AJ becomes moot. Id. at (¶ 10) (citing Kitchens v. Jerry Vowell Logging, 874 So.2d 456, 462 (¶ 16) (Miss.Ct.App.2004)). “There may be substantial evidence to support the [AJ’s] findings, but so long as there is also substantial evidence to support the Commission’s contrary findings, the latter will be upheld.” Id. (quoting Kitchens, 874 So.2d at 462 (¶ 17)).
DISCUSSION
I. Whether the Commission applied an improper legal standard in reversing the AJ’s finding of permanent and total disability.
II. Whether the Commission erred in finding that Barfield was temporarily totally disabled.
¶ 12. Both parties present separate issues regarding the Commission’s finding that Barfield is temporarily and totally disabled as a result of the attack at work. We address these assignments of error together, as they are related. MSH argues that the Commission’s finding of temporary total disability is unsupported by the evidence. Barfield argues that the Commission failed to utilize a proper legal standard in determining the extent of his disability. The disputed language in the Commission’s order regarding its finding of temporary total disability reads:
Based on the evidence as a whole, a return to gainful employment does not appear medically or physically impossible for the Claimant. Considering his psychological condition, his age, education, [and] past experience, we believe he has sustained a significant occupational disability which we reasonably estimate to be about 50 [percent].
¶ 13. Barfield claims that the Commission held him to a higher standard of proof by requiring him to show that it was impossible for him to return to work due to his injuries, rather than requiring him to show by clear and convincing evidence that his injuries rendered him permanently and totally disabled. We disagree. Although the Commission referred to Barfield’s capability of returning to gainful employment, this was not the basis of its ruling. In its order, the Commission listed the medical evidence on which it based its finding.
¶ 14. The Commission agreed that Barfield sustained debilitating injuries from the attack. However, it found that Barfield failed to prove that he was permanently disabled as a result. The Commission relied on medical records from Barfield’s visits with two physicians. According to Dr. Webb, Barfield had “no permanent impairment or restrictions ... relating] to the [July 1, 2004] incident.” Dr. Webb also concluded that Barfield suffered from no psychiatric disability whatsoever.
¶ 15. Results from a cognitive assessment given by Dr. Irby suggested that Barfield suffered no significant cognitive defects as a result of the attack. Dr. Irby concluded that while Barfield did score below average in certain areas of the assessment, the results did not reflect his true cognitive abilities. According to Dr. Irby, the results of Barfield’s assessment gave some indication that he was intentionally underperforming. Overall, Dr. Irby determined that Barfield did not suffer from a traumatic brain injury or PTSD. Neither Dr. Webb nor Dr. Irby gave any indication that Barfield was permanently disabled.
*466 ¶ 16. The Mississippi Supreme Court has held that “whenever the expert evidence is conflicting, [the reviewing court] will affirm the Commission[’s decision] whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss.2003) (Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). Here, the opinions of the physicians regarding the extent of Barfield’s psychological injury are conflicting. However, we find that the Commission’s finding of temporary total disability is substantiated by the medical evidence discussed above. As previously stated, we give deference to the decision of the Commission, and will not disturb that decision so long as it is supported by substantial evidence. Harris, 67 So.3d at 844 (¶ 10). Accordingly, we find no error in the Commission’s findings. This issue is without merit.
III. Whether the Commission erred in finding a causal link between Barfield’s psychological condition and his work-related injury.
¶ 17. In its cross-appeal, MSH argues that Barfield failed to demonstrate a causal connection between the July 1, 2004 incident and his mental condition. “When a claimant seeks benefits as a result of a compensable mental injury, the burden of proof is raised to clear and convincing evidence of a causal connection between the injury and employment.” Harris, 67 So.3d at 848 (¶ 19) (quoting Hosp. Housekeeping Sys., Inc. v. Townsend, 993 So.2d 418, 423 (¶ 19) (Miss.Ct.App.2008)). In addition, Barfield was required to show that his psychological condition was “caused by something more than the ordinary incidents of employment.” Id. (citing Townsend, 993 So.2d at 424 (¶ 21)). Our review of the record shows that Barfield met his burden of proof.
¶ 18. Following the violent attack at work, Barfield was examined by his family physician of fourteen years. Dr. Easley diagnosed Barfield with PTSD resulting from his work-related incident, and opined that Barfield would not be able to return to work full-time. Dr. Easley noted that since the July 1, 2004 incident, Barfield reported feeling anxious, nervous, and depressed. In fact, the record shows that Dr. Easley felt that Barfield’s psychological symptoms were serious enough to require further treatment with a neurologist. MSH claims that Barfield’s psychological condition was preexisting. However, there is absolutely no evidence in the record before us to show that Barfield suffered from PTSD or was diagnosed with any other psychological illness prior to the July 1, 2004 incident.
¶ 19. Furthermore, Barfield’s medical records from visits with three additional physicians indicate that he sustained psychological injures from the attack at work. After performing a psychological evaluation, Dr. Norton, Barfield’s treating physician, noted the following:
I am treating him for depression, post-traumatic stress disorder, post-consciousness syndrome and/or memory loss. My diagnosis is that of traumatic brain injury and depression. This injury is due to a beating that occurred on July 1, 2004[,] which involved head injury. Mr Barfield does have a permanent disability as a result of this beating and is unable to work.
On a separate occasion, after performing a comprehensive mental-status examination, Dr. Elias-Hooper concluded that Barfield’s symptoms were consistent with those of PTSD. Regarding the effect of the violent attack, Dr. Elias-Hooper noted the following:
This claimant apparently suffered a head injury in July 2004 following a *467 physical attack.... It is believed this claimant would not be able to function full-time in any normal work-related environment. He would, however, be able to complete simple activities.... His ability to complete tasks as he once was able is also affected. Diagnostic consideration would be for post[-]traumatic stress disorder and possibly depression secondary to medical condition.
Following a separate assessment, Dr. Yates opined that Barfield suffered from a traumatic brain injury and post-traumatic stress syndrome as a result of the violent attack.
¶ 20. A review of the record shows that after the attack, Barfield was financially dependent on his mother, as he was no longer able to manage his finances due to memory loss.[3] Considering the evidence, Barfield sufficiently demonstrated a causal link between his psychological condition and the July 1, 2004 incident by clear and convincing evidence. Thus, we find no error in the Commission’s finding of a compensable mental injury. This issue is without merit.
¶ 21. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPEL-LEE AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.

. The parties stipulated that the date of maximum medical improvement for Barfield’s psychological injury was June 24, 2005.

. The Commission began Barfield's temporary-disability-benefits period on December 26, 2004, which is the date that Barfield’s PTSD diagnosis first appears in his medical records.

. After quitting his job at MSH, Barfield was approved for Social Security disability benefits. Testimony revealed that because of Bar-field's frequent memory loss and paranoia, he was not able to receive the benefits until his mother gained power of attorney.