CARLTON, J.,
dissenting:
¶ 30. I respectfully dissent from the majority’s opinion and agree with the argument asserted by MBN that the evidence does not support a finding of PTSD. “When a claimant seeks benefits as a result of a compensable mental injury, the burden of proof is raised to clear and convincing evidence of a causal connection between the injury and employment.” *201 Barfield v. Miss. State Hosp., 120 So.3d 461, 466 (¶ 17) (Miss.Ct.App.2013) (citation omitted). The claimant must show that the mental injury resulted from “something more than the ordinary incidents of employment.” Scott Colson’s Shop Inc. v. Harris, 67 So.3d 841, 848 (¶ 19) (Miss.Ct.App.2011) (citation omitted).
¶ 31. As set forth in the DSM-IV, which is provided in the record, PTSD requires the following:
[DJirect personal experience of an event that involves actual or threatened death or serious injury, or other threat to one’s physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate.
The DSM-IV also provides that a PTSD diagnosis requires that the “person’s response to the event must involve intense fear, helplessness, or horror.” Furthermore, “[t]he characteristic symptoms of PTSD resulting from the exposure to the extreme trauma include persistent reex-periencing of the traumatic event, persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness, and persistent symptoms of increased arousal.”
¶ 32. The majority places great weight upon the diagnosis of Williams, a licensed marriage and family therapist, who treated Adeox under the supervision of Dr. Russell, a psychiatrist at Region 8 Mental Health Center. Williams diagnosed Adeox with PTSD on Adcox’s initial visit. Dr. Russell, Williams’s supervisor, confirmed the diagnosis the same day of the initial visit. Dr. Russell considered Adcox’s post-Hurricane Katrina experience to be the traumatic event that qualified the PTSD diagnosis, and in his deposition testimony, he attacked Dr. Webb’s diagnosis as not having considered the full range of diagnostic criteria for PTSD under the DSM-IV.
¶ 33. A review of the DSM-IV criteria for PTSD shows, however, that Adeox did not encounter a qualifying event with Hurricane Katrina. Neither Adeox nor her family members or close associates were under a direct threat of injury or death. Along with a team of other MBN agents, Adeox assisted in the aftermath of Hurricane Katrina. She therefore helped after the life-threatening risk of Hurricane Katrina had ended. She did not suffer a direct threat to herself, a loved one, or a close associate in that effort as required for the diagnosis of PTSD under the DSM-IV.
¶ 34. In addition to the requirement of experiencing some traumatic threat of injury or death to the person, a loved one, or a close associate, the person’s response must also include an intense fear, helplessness, or horror. As noted earlier, the DSM-IV also provides that the symptoms resulting from exposure to such extreme trauma include persistent reexperiencing of the traumatic event, persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness, and persistent symptoms of increased arousal. As stated by Dr. Webb, however, the record shows that Adcox’s alleged qualifying event, her response, and her symptoms fail to meet the diagnostic criteria for PTSD diagnosis.
¶ 35. While finding that Adcox’s diagnosis failed to constitute PTSD, Dr. Webb did find that Adeox possessed other issues, and he acknowledged that Adeox was on multiple pain and psychiatric medications that limited her concentration, mental agility, and alertness. He also noted that during their interview Adeox appeared overly medicated, held her head *202 down mostly, and slurred her words. Dr. Webb recommended that Adcox undergo an inpatient intoxication program to assess her need for all the medications prescribed for her. Dr. Webb’s medical impression also noted that Adcox had Axis II histrionic personality traits; Axis III headaches, neck pain, shoulder pain, and increased weight; and Axis IV stressors involving a 1990 shooting and a 2003 motor-vehicle accident.
¶ 86. In finding that Adcox’s medical impression included headaches, neck pain, and histrionic personality traits, Dr. Webb applied the DSM-IV criteria and determined that Adcox’s post-Hurricane Katrina activities failed to constitute a qualifying event for purposes of a PTSD diagnosis. As acknowledged by Dr. Webb, Adcox certainly possesses other conditions with other diagnoses, but these do not include PTSD. The failure of the evidence to show that Adcox suffered PTSD from her post-Hurricane Katrina activities results in a lack of evidence of a causal connection between her mental injuries and her employment. Cf. Bayfield, 120 So.3d at 467 (¶ 20) (affirming the finding that a causal connection existed between the claimant’s PTSD and his employment). In conclusion, Adcox failed to meet her burden of proof to show by clear and convincing evidence a causal connection between her mental injuries and her employment. See Harris, 67 So.3d at 848 (¶ 19). Therefore, I would reverse the judgments of the Mississippi Workers’ Compensation Commission and the circuit court since the finding of PTSD and the decision to award benefits for that diagnosis was not supported by the evidence.